Arthur PORPORIS, Victor Buys and G. H. Bohling, Appellants,

v.

CITY OF WARSON WOODS, a municipal corporation of the fourth class, Fred Leber, Mayor of the City of Warson Woods; Robert Christopher, Robert C. Ely, Dale Wernig, Ray Dreher, William Vesser and Charles Wilson, as members of the Board of Aldermen; Harold Neusitz, Building Commissioner of Warson Woods; John Dugan, Charles Eck, William Kindorf, Sterling Snyder, and Al Gabris, as members of the Zoning Commission, and Everett Schneider, doing business as Everett Schneider Development Company, Respondents.

No. 48499.

Supreme Court of Missouri,

Division No. 2.

Jan. 8, 1962.

Donald S. Hilleary, St. Louis, for appellants.

Jesse L. Renderer, St. Louis, for respondents City of Warson Woods et al.

Mortimer A. Rosecan, St. Louis, for respondent Everett M. Schneider.

EAGER, Presiding Judge.

Plaintiffs, owners of three residence lots in the City of Warson Woods in St. Louis County, filed a declaratory judgment suit for the purpose of invalidating one section of the comprehensive zoning ordinance of the city, and also a special permit issued thereunder for parking space. The members of the Board of Aldermen, the members of the Zoning Commission, the Mayor and the applicant for the special permit were joined as defendants. Such allegations of the petition as are material to our issues will be referred to later. The answer admitted the formal allegations and denied the substantive ones. The trial court found and decreed that the controverted section of the zoning ordinance and the special permit were valid and constitutional.

Most of the facts were stipulated, although there was some incidental evidence. Warson Woods, a fourth-class city, has in force a comprehensive zoning ordinance (No. 70), enacted pursuant to sections 89.-010–89.140, RSMo 1959, V.A.M.S.; all buildings in the commercial district were required thereby to provide specified off-street parking space. Section 3 of Article IV of that ordinance is as follows: "The Board of Trustees shall have the authority to permit the establishment of off-street parking space within residential districts, not more than 125 feet from any commercial district, and contiguous thereto, by special permit, but only when such requirements and standards of improving, maintaining, operating, and screening of the parking space are imposed as will protect the character of the surrounding development. No such special permit shall be granted until after a public hearing and after a report has been submitted by the Village Zoning and Planning Commission." Defendant Schneider applied orally to the Board of Aldermen (formerly called the Board of Trustees under village organization) for a permit to construct a shopping center. This proposal was rejected, as presented. Later Schneider presented a modified proposal which included a request for permission to construct additional parking space to meet the requirements of the ordinance, in an area adjacent to and north of the shopping (commercial) area, but designated as residential. This area, which we shall simply refer to as the "parking area" was bounded by the commercial area on the south and by a park on the north; the park had been donated by Schneider and was used by the public. It is conceded that this area does not extend more than 125 feet into a residential area, and that it is contiguous to the commercial area. All of plaintiffs' lots are entirely separated from the proposed parking area by the park, and they face a street which lies north of the park. The modified proposal was accompanied by plans and a sketch. This entire proposal, with the plans and sketch, was referred to the Zoning Commission. The Zoning Commission considered the proposal, was unable to agree, and announced that fact to the Board of Aldermen. Later, however, it submitted a written report which dealt largely with the shopping center project as a whole; included therein were suggestions that the parking space was insufficient even including the proposed additional area, that the "rear yards" were not sufficient, and that the height of one building was too great. We quote the following from the report, since some controversy has risen concerning it:

"Mr. Schneider's plans also contemplate the use for parking purposes of property now zoned residential. The procedure to be followed in granting such permission is contained in Section 3 of Article IV.

"It is the recommendation of this Commission that if any changes are to be made in the zoning ordinance which has the effect of broadening the Commercial District at a time when residential development adjoining that district has been completed, that such changes be made only after careful consideration of the effect of such changes on the adjoining residential property.

"We also suggest that the Board determine the effect of such a project on the drainage situation, having in mind the desirability of avoiding another 'Lake Manchester' condition which resulted from the Warson Woods Shopping Center development."

Upon further consideration the Board determined to approve the plan, and to begin proceedings for the purpose of issuing a special permit for the additional parking. It called and held a public meeting thereon, at which plaintiffs' counsel appeared and protested; it later received a petition signed by four protestors under section 89.060, RSMo 1959, V.A.M.S. It held additional special meetings and on March 13, 1959, it unanimously passed Ordinance No. 150 which granted the permit, conditionally. Attached to the ordinance was a form of "Agreement and Permit" which was in fact executed by Schneider and the city. This required Schneider to pave the area, as indeed was required in all parking areas under Section 2, Article IV of the general zoning ordinance; further requirements were: a curb fifteen feet inside the north line, the grading of the area for proper drainage, the construction of all exits and entrances so as to lie within the commercial area, the arrangement of all lights so as to shield the adjacent residential areas, the construction of a chain link fence, a concrete retaining wall, and a louvered redwood fence in certain respective portions of the area, and designated screenings and plantings, evergreen and otherwise.

At approximately the time the permit was issued by the city, this suit was filed. Plaintiffs' Points here are, in essence: (1) that the special permit (Ordinance No. 150) is void because Section 3 of the Zoning Ordinance constitutes an unwarranted delegation of legislative discretion to an administrative board without sufficient standards or guides, in violation of Article II, Section 1, Missouri Constitution, V.A.M.S.; and (2) that, assuming constitutionality, the permit issued here was still invalid because no report was submitted by the Zoning Commission as required. Counsel mention, very incidentally, the due process clause, Article I, Section 10, Missouri Constitution, but do not argue the point and we disregard it. It does not, in fact, merit consideration here.

The first substantive question is whether the Board of Aldermen (which we shall refer to merely as the Board), in enacting the general zoning ordinance, sufficiently circumscribed the discretion which it delegated to itself as an administrative body, so to insure that such discretion would not be arbitrarily exercised. It is true, as plaintiffs suggest, that an ordinance or statute which "attempts to clothe an administrative officer with arbitrary discretion, without a definite standard or rule for his guidance" is unconstitutional. Lux v. Milwaukee Mechanics Ins. Co., 322 Mo. 342, 15 S.W.2d 343 cited by plaintiffs. In that case the ordinance gave to a city official the power to condemn a building after a fire and to order it torn down as unsafe, with no guides, tests or standards whatever to protect the property owner from arbitrary action, and without the designation of any facts or circumstances which would be recognized as creating an emergency justifying the action. As one phase of the argument that the present ordinance imposes no sufficient standards, counsel argue (as nearly as we can understand it) that the conditions imposed thereby are not a standard or guide to be used in making the original determination whether to issue or not to issue the permit, but are merely things to

be considered and requirements to be imposed "after a decision has been made to issue a permit * * *." We do not so construe the ordinance. It is clear to us that the real intent of Section 3 is to require the Board, acting in its administrative capacity, to determine in each case and under the existing circumstances (1) whether the absolute requirements of 125 feet and "contiguous thereto" are met; and (2), whether such requirements as to improving, maintaining, operating and screening the area may be imposed as will "protect the character" of the residence area. If it finds affirmatively on these propositions, then such requirements are to be affixed, and a permit granted conditionally, as was done in this case; if not, a permit is to be denied. Perhaps plainer language could have been used, but any other interpretation is unreasonable.

Counsel also cite Congregation Temple Israel v. City of Creve Coeur, Mo., 320 S.W. 2d 451, and State ex rel. Ludlow v. Guffey, Banc, Mo., 306 S.W.2d 552, as supporting his contention of the inadequacy of the standards imposed. In the Temple Israel case an ordinance permitted churches, schools, golf courses, private clubs, public parks, playgrounds, hospitals and institutions in any zoning district only upon written application, investigation by and report of the Zoning Commission, a public hearing, and "subject to such protective restriction as it may deem necessary to protect the character of the surrounding property, the public health and the public welfare, * *." [320 S.W.2d 452.] The primary bases of the decision were: that the ordinance infringed upon the federal constitutional provisions guaranteeing "freedom of religious worship," as well as upon our own constitutional provisions for the establishment of public schools; and, that our legislature, in enacting its enabling legislation for zoning (Ch. 89) had no intention of "authorizing the exclusion of either churches or schools from residence districts * * *" (320 S.W.2d loc. cit. 455). In commenting on that ordinance (perhaps as dicta) the court said, 320 S.W.2d loc. cit. 452–453: "While this ordinance provides some standards for establishing protective restrictions when a permit is granted, it does not provide any standards for granting a permit as did the ordinance considered in State ex rel. Ludlow v. Guffey, Mo.Sup., 306 S.W.2d 552, cited by defendants." Counsel here seem to take this as a statement that the ordinance there literally did not contain *any* standards and they seek to compare it with our present ordinance. We do not so read the opinion, but construe the statement to mean that the ordinance there contained no *such* standards as were shown in the Guffey case, to be considered later. In any event we do not find that the requirements imposed by the ordinance in the Israel case are the equivalent to those in the present case. We note also that the ordinance there sought to control such an enormous group of entities and institutions that a mere generalization such as the requirement of "protective restriction" would provide, at best, very little limitation upon the discretion of those charged with the administration of the ordinance.

The case of State ex rel. Ludlow v. Guffey, Banc, Mo., 306 S.W.2d 552, 554, is apparently cited by plaintiffs as an illustration of an ordinance containing proper restrictions. In that case a comprehensive zoning ordinance permitted gasoline filling stations in any one of three areas of Webster Groves, upon special permit issued after a public hearing, and after referral to and a report from the City Plan Commission "regarding the effect of such proposed building or use upon the character of the neighborhood, traffic conditions, public utility facilities and other matters pertaining to the general welfare." There an application had been acted upon adversely both by the Commission and the City Council. The proceeding was one in mandamus, in which it was actually sought to invalidate the ordinance. In upholding the ordinance the court held: that the council acted administratively in passing upon the application and in thus enforcing the legislation which it had previously enacted; and, that the city council was authorized under this procedure to de-

termine "whether the granting of the permit will or will not promote the health, safety, morals, or general welfare of the people of Webster Groves in accordance with and in the accomplishment of the comprehensive zoning plan * * *." The court further noted that a determination of the sufficiency of the standards imposed was affected by the fact that the section attacked was an integral part of a comprehensive zoning ordinance (as ours also is) in which a uniform procedure was outlined to guide the Council's discretion. The court further said, 306 S.W.2d loc. cit. 558: "We think it would be impracticable to set forth a completely comprehensive standard insuring uniform discretionary action by the City Council. * * * Section 13 prescribes a procedure for determining, and requires the City Council to determine, whether the location and use of a filling station in C commerical would or would not promote the 'health, safety, morals or general welfare of the community' by determining specifically whether such location and use would or would not adversely affect 'the character of the neighborhood, traffic conditions, public utility facilities and other matters pertaining to the general welfare'; it requires that such determination be made upon evidence and facts adduced before it (a quasi-judicial function) and requires the Council to thereafter exercise its discretion based upon such finding." The case of State ex rel. Triangle Fuel Co. v. Caulfield, 355 Mo. 330, 196 S.W.2d 296, also cited, is so dissimilar on its facts as to require no discussion here.

The defendants rely largely upon the Guffey case, supra, except for citations and arguments concerning rules of construction, which we need not elaborate upon. It is well to note, however, that the construction given to a statute or ordinance by those charged with its enforcement is entitled to "respectful consideration." State ex rel. McAllister v. Cupples Station Light, Heat & Power Co., 283 Mo. 115, 223 S.W. 75, 83.

We hold that the provisions of the present Section 3, fairly considered, impose standards sufficient to meet the constitutional requirements. Here there are two immutable requirements (none in Guffey) namely, that the extended area may not intrude more than 125 feet into a residential district, and that it must be contiguous to the commercial area. The ordinance provides that: "No such special permit shall be granted until after a public hearing and after a report has been submitted by the Village Zoning and Planning Commission." The Board is then entitled to consider and rule upon the application, granting it *if* it finds that the specifically stated protections will be adequate under the existing circumstances; if it *does* so find, it shall impose the conditions, —otherwise it should deny the application. Other provisions of the zoning ordinance required that *all* parking areas should be "dust-free, all-weather surface." (Section 2 Article IV.) We do not construe Section 3 as giving the Board the discretion to waive the specified requirements of protection at its whim or caprice, as plaintiffs suggest, but as directing it to determine how they may and shall be applied, i. e., the physical details, and whether they will then furnish adequate protection. The detailed contract executed between Schneider and the city, which is here as an exhibit, illustrates the practical impossibility of including in a general ordinance the specific protection appropriate in every such instance. It goes into intricate detail regarding paving, grading, location of entrances, curbing, fencing, the construction of a retaining wall and a parkway, and the landscaping and planting, in the latter of which even the types of shrubbery and trees are specified. A copy of this contract was made a part of the ordinance-permit, and it was executed "in consideration of the issuance of the permit and of the mutual agreements." The contract was made a continuing one, and the city was empowered to revoke the permit, after notice and hearing, upon Schneider's future default.

We wholly fail to appreciate the significance of plaintiffs' argument to the effect that Section 3 furnished no requirement that

a permit be issued "if certain facts are found * * *" and that A could be granted a permit and B arbitrarily refused one under similar applications and facts, "because the requirements * * * are not conditions which the board uses" in determining whether a permit "should or should not issue in the first instance." If, in fact, the Board does not consider the suggested requirements and the existing circumstances in connection with its determination and act accordingly, and if it does not impose the necessary protective measures as conditions to the granting of a permit, then it wholly fails to appreciate the intent and meaning of its own legislative act. We attribute no such caprice to the board and no such meaning to the ordinance. We rule that the standards imposed were sufficient, and that Section 3 of Ordinance 70, as well as the permit, are valid.

■ The remaining contention may be disposed of briefly. Plaintiffs say that even if the ordinance is constitutional, the permit is invalid because no report was submitted by the Zoning Commission, as required. Therein counsel argue that the document submitted was not a report in fact, because it contained no findings as to the effect of the proposed permit, such as were made in Guffey, supra; and that here (as quoted above) the Commission merely pointed out that the procedure to be followed was contained in Section 3 of Article IV of the Zoning Ordinance. The report actually went further; it contained two additional paragraphs which, although they dealt largely with the project as a whole, also recommended "careful consideration" of the effect on the residential area and of the drainage problem in particular. The Zoning Commission had been in disagreement on the whole proposal, as the record specifically shows, and had announced that fact to the Board. It seems apparent that the report actually submitted was made in view of its disagreement, and perhaps as a compromise. The Board need not abdicate its functions merely because the Commission was unable or unwilling to submit a more definite rec-

ommendation. Essentially the report is merely advisory; plaintiffs concede this in their reply brief at page five, and indeed, if the Board's action was required to be based upon the content of the report, then the real discretion would be improperly vested in the Zoning Commission. In any event, a report was made, and perhaps it was the best one available under the circumstances. The Board then, concededly, held a public hearing, received oral and written protests, and acted. It had the power to do so. There is nothing in this ordinance which requires, nor need it require, that a public hearing be held before the Commission if, in fact, the Board holds one.

Finding no error, the judgment is affirmed.

All of the Judges concur.