GEM STORES, INC., a corporation, G. E. M. Southway, Inc., a corporation, and Chix Shop, Inc., a corporation, Appellants,

v.

Daniel V. O'BRIEN, Prosecuting Attorney of St. Louis County, Missouri, Respondent,

and

Thomas F. Eagleton, Attorney General of the State of Missouri, Intervenor-Respondent.

No. 50355.

Supreme Court of Missouri,

En Banc.

Dec. 9, 1963.

Rehearing Denied Jan. 13, 1964.

Guilfoil, Caruthers, Symington & Montrey, St. Louis, for appellants.

Lewis, Rice, Tucker, Allen & Chubb, Arthur R. Tucker, Samuel H. Liberman, Charles L. Edson, St. Louis, special counsel for respondents Daniel V. O'Brien and Thomas F. Eagleton.

John H. Martin, St. Louis, for Missouri State Labor Council, AFL–CIO, amicus curiae.

Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, amicus curiae.

STORCKMAN, Judge.

This is an appeal from a declaratory judgment upholding the constitutionality of § 563.721, RSMo Supp. 1963, V.A.M.S., Laws 1963, Senate Bill No. 49, which became effective on October 13, 1963. The statute prohibits the selling at retail of certain commodities on Sunday. The plaintiffs, GEM Stores, Inc., and G.E.M. Southway, Inc., are Missouri corporations conducting general retail department store businesses in St. Louis County. The plaintiff, Chix Shop, Inc., also a Missouri corporation, is a licensed concessionaire of the other plaintiffs and is engaged in the business of selling wearing apparel for children and infants at retail. The defendant Daniel V. O'Brien is the prosecuting attorney of St. Louis County. The attorney general of the State of Missouri, Thomas F. Eagleton, was served with a copy of plaintiffs' petition pursuant to § 527.110, RSMo 1959, V.A.M.S., and was permitted to intervene as a party defendant. After the defendants filed their separate answers, the plaintiffs filed a joint motion for judgment on the pleadings. No evidence was offered and the cause was decided against the plaintiffs on the allegations of the pleadings. The plaintiffs appealed, but the parties will generally be referred to as they were designated in the trial court.

The complete text, including the title, of the legislative enactment, sometimes herein referred to as the Act, is as follows:

"An Act—To repeal sections 563.-690, 563.700, 563.710, 563.720 and 563.-730, RSMo 1959, relating to proscribed activities and conduct on Sunday and exceptions thereto, and to enact one new section in lieu thereof relating to the same subject.

"Be it enacted by the General Assembly of the State of Missouri, as follows:

"Section A. Sections 563.690, 563.-700, 563.710, 563.720 and 563.730, RSMo 1959, are repealed and one new section enacted in lieu thereof, to read as follows:

"Section 1. 1. Whoever engages on Sunday in the business of selling or sells or offers for sale on such day at retail motor vehicles; clothing and wearing apparel; clothing accessories; furniture; housewares; home, business or office furnishings; household, business or office appliances; hardware; tools; paints; building and lumber supply materials; jewelry; silverware; watches; clocks; luggage; musical instruments and recordings or toys; excluding novelties and souvenirs, is guilty of a misdemeanor and shall upon conviction for the first offense be sentenced to pay a fine of not exceeding one hundred dollars, and for the second or any subsequent offense be sentenced to pay a fine of not exceeding two hundred dollars or undergo confinement, not exceeding thirty days, in the county jail in default thereof.

"2. Each separate sale or offer to sell shall constitute a separate offense.

"3. Information charging violations of this section shall be brought within

five days after the commission of the alleged offense and not thereafter.

"4. The operation of any place of business where any goods, wares or merchandise are sold or exposed for sale in violation of this Act is hereby declared to be a public and common nuisance.

"5. If any provision of this Act is found to be unconstitutional, the remaining provisions are and shall remain in full force and effect.

"The Legislature hereby declares that, if the inclusion of any category of goods, wares and merchandise in Section 1 is invalid under the Constitution, it intends to and does hereby exclude such category of goods, wares and merchandise from the categories of goods, wares and merchandise prohibited from sale or exposure for sale by Section 1 of this Act."

The petition alleges that the plaintiffs "have been and are engaged on Sunday from 12:00 p. m. to 6:00 p. m. in the business of selling, and sell and offer for sale on Sunday at retail, practically all of the items the sale of which on Sunday is prohibited by The Act." The grounds upon which the constitutionality of the Act is attacked are stated in paragraphs 7, 8, and 9 of the petition as follows:

"7. The entire Act is an unconstitutional, void, and unenforceable special law, in violation of Article III, Sec. 40 of the Missouri Constitution of 1945, in that it proscribes the sale on Sunday of only the articles enumerated therein, and excludes from its proscriptions every other gainful activity carried on by every other business in Missouri.

"8. The entire Act is unconstitutional, void and unenforceable because it creates unreasonable, arbitrary and discriminatory classifications of activities prohibited on Sunday, in violation of plaintiffs' right to equal rights and opportunity under the law, and to the equal protection of the law, under Article I, Sec. 2 of the Missouri Constitution of 1945 and the Fourteenth Amendment of the United States Constitution in the following respects:

"(a) The classifications in The Act are arbitrary and bear no reasonable relation to the public welfare, health and safety;

"(b) The Act arbitrarily discriminates against plaintiffs in that it arbitrarily prohibits the sale on Sunday of certain items sold by plaintiffs and allows every other gainful occupation to be carried on on Sunday so that any and all persons, firms and corporations may lawfully engage in, for example, (i) manufacturing, mining, agriculture, and foodstuff production, and the processing, distribution, transportation and sale of the product thereof, (ii) the business of selling and offering for sale improved real property, such as homes, and unimproved real property, of every description; and (iii) the performance of work, labor and services in connection with the activities described in subparagraphs (i) and (ii) above, and also in connection with every service occupation such as, for instance, laundries, cleaning establishments and repair facilities of every description.

"9. The Act, in its entirety, deprives plaintiffs of liberty and property without due process of law, in violation of plaintiffs' rights under Article I. Sec. 10 of the Missouri Constitution of 1945, and the Fourteenth Amendment of the United States Constitution, in that on its face, The Act evidences no purpose to promote the general public health, welfare, safety or recreation, but the purpose solely to restrict plaintiffs' type of business."

The petition further states that the plaintiffs "cannot comply with The Act except by ceasing to conduct business on Sundays,

which would inflict immediate, substantial and irreparable damage and injury upon their business and property." The prayer of the petition is that the Act be held "void and unconstitutional in its entirety", and that the defendants be permanently enjoined from enforcing it.

The answers of the defendants deny the allegations of unconstitutionality in paragraphs 7, 8, and 9 of the petition and each affirmatively "avers that the Act on its face, conforms, in all respects, to the practice of the General Assembly, based on the recommendations of the Committee On Legislative Research, whereby specific expressions of a purpose to promote the general public health, welfare and safety are omitted as being unnecessary, in accordance with the presumption that laws have been passed with a view to the welfare of the community."

The trial court decided all issues against the plaintiffs and entered its judgment holding the Act constitutionally valid from which judgment the plaintiffs have appealed.

 This is a proper case for a declaratory judgment because the attack upon the validity of the state statute presents a justiciable controversy in which the plaintiffs have a legally protectible interest. Section 527.020, RSMo 1959, V.A.M.S.; Sta-Whip Sales Company v. City of St. Louis, Mo., 307 S.W.2d 495, 497 [1]; State ex rel. Chilcutt v. Thatch, 359 Mo. 122, 221 S.W.2d 172, 176 [5]. The supreme court has jurisdiction of the appeal because a construction of the constitution of this state and of the United States is involved and the attorney general of the State of Missouri in his capacity as a state officer is a party. Art. 5, § 3, Constitution of Missouri 1945, V.A. M.S.

On appeal the plaintiffs make two principal contentions as to the constitutional invalidity of the Missouri Sunday Sales Act. One is that it violates the Fourteenth Amendment to the Constitution of the Unit-

ed States and §§ 2 and 10 of Art. 1 of the Constitution of Missouri 1945 in that: "The act denies to appellants due process of law and equal rights and opportunity under the law because it bears no valid relationship to the only constitutional basis for the exercise of the police power to regulate the Sunday activity of a lawful and harmless business, that is, the state's objective to achieve a day of rest and tranquility for the general good of mankind." The other contention is that the Act is a special law in violation of Art. 3, § 40, subparagraph (30), of the Missouri Constitution 1945.

The Missouri Sunday Sales Act is practically identical with a Pennsylvania statute enacted in 1959. The plaintiffs concede that except for the inclusion of motor vehicles and minor changes in the penalty sections, the Missouri Act "is a word-for-word borrowing from the 1959 Pennsylvania statute." On May 29, 1961, the Supreme Court of the United States decided four cases involving the constitutional validity of Sunday selling or closing laws. They are: McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393; Two Guys From Harrison-Allenton, Inc. v. McGinley, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed. 2d 551; Braunfeld v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563; and Gallagher v. Crown Kosher Super Market of Massachusetts, Inc., 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536. The Two Guys case directly held that the 1959 Pennsylvania Sunday retail sales law, after which the Missouri Act was patterned, does not violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment. 366 U.S. 589, 591–592, 81 S.Ct. 1139, 1140, 6 L.Ed.2d 551.

The plaintiffs seek to avoid the impact of the Two Guys decision by their contention that the 1959 Pennsylvania statute was sustained only because it was part of a body of law which included a 1939 Pennsylvania law prohibiting all "worldly employment" on Sunday and that Missouri does not have an over-all policy against Sunday employment because the 1963 Act repealed "those

very sections of Missouri law which have banned such secular activity for 138 years." This calls for an examination of the past and present Missouri Sunday laws. In evaluating the legislative policy of Missouri, however, it should be noted that Two Guys and the three companion cases each involved alleged violations of the religious proscriptions of the First Amendment of the United States Constitution in addition to the other constitutional issues. The instant case does not present any question under the First Amendment.

In the main, the five sections repealed by the 1963 Act had remained unchanged for more than 125 years, practically since the beginning of Missouri's statehood. In brief substance, § 563.690 provided that every person who labored or performed "any work other than the household offices of daily necessity, or other works of necessity or charity, or who shall be guilty of hunting game or shooting on the first day of the week, commonly called Sunday, shall be deemed guilty of a misdemeanor, and fined not exceeding fifty dollars." Section 563.700 exempted from the operation of § 563.690 members of a religious society who observed as a Sabbath a day other than the first day of the week and also ferrymen. Section 563.710 made it a misdemeanor for a person to engage in horse racing, cockfighting, or playing at cards or games of any kind on Sunday. Section 563.720 provided that every person who shall expose for sale any goods, wares or merchandise, or shall keep open any ale or porter house, grocery or tippling shop, or shall sell or retail any fermented or distilled liquor on Sunday shall be guilty of a misdemeanor. Section 563.730 provided that § 563.720 should not be construed to prevent "the sale of any drugs or medicines, provisions or other articles of immediate necessity."

These laws, designed to achieve a periodic day of rest for the general health and welfare of the inhabitants of the state, apparently served their purpose very well at the time they were enacted and while the state remained a predominately agricultural society. The objects of labor and commodities to which the laws were applicable were comparatively few and the laws were reasonably enforceable. With the advent of the industrial age, improved communication and transportation, and particularly the development of motor vehicles and good roads, the situation was drastically changed. Employments and commodities became numerous and varied. Concepts of what were works of necessity underwent a radical change. Attacks were made on the present validity of such laws. We need to refer to only two of the recent reported decisions of this court to demonstrate the conditions with which the general assembly was confronted when it considered and passed Senate Bill 49.

State v. Katz Drug Company, Mo., 352 S.W.2d 678, decided December 11, 1961, was an appeal from a conviction of exposing for sale on Sunday goods, wares, and merchandise in violation of §§ 563.720 and 563.730. The facts were that on a Sunday morning four members of the Meat Cutters Union purchased from the defendant an electric frying pan, a card table, two decks of playing cards, and 20 ballpoint pens and refills which were articles the purchasers did not need. This court held that the statutes proscribing the Sunday sale of goods, wares, and merchandise, excepting drugs or medicines, provisions, or other articles of immediate necessity, were not invalid as being vague and uncertain and did not violate other constitutional rights. The court further held that the standard for determining articles of immediate necessity must be the necessity to people generally rather than the necessity of a particular individual on a particular occasion. The case was reversed and remanded for prejudicial error committed in the voir dire examination. The opinion notes, however, that "it would seem to be time to modernize our Sunday statutes since they contain some terms applicable to conditions of 1825" and further states: "Certainly a revision now could give better treatment and better standards for modern conditions but that is a matter

for the Legislature." 352 S.W.2d 678, 681. See also Cardinal Sporting Goods Company v. Eagleton, D.C., 213 F.Supp. 207, 219, decided January 11, 1963, appeal dismissed as moot, 374 U.S. 857, 83 S.Ct. 1866, 10 L. Ed.2d 1043.

In the wake of Katz came Harvey v. Priest, Mo., 366 S.W.2d 324, decided March 11, 1963. The plaintiff Fred Harvey, a corporate concessionaire at Union Station in St. Louis, obtained a declaratory judgment which specified commodities that could be sold on Sunday to the traveling public and railroad employees pursuant to § 563.720 and the exceptions stated in § 563.730. This was on the theory that Katz had indicated that supplies immediately needed to keep modern traffic moving would now be "articles of immediate necessity" (§ 563.730), as would supplies immediately needed to carry on "works of necessity" (§ 563.690). In its declaratory judgment the trial court specified 57 items and categories of commodities that could lawfully be sold on Sunday to the traveling public and railroad employees as articles of immediate necessity in order to keep modern railroad traffic moving. Very few, if any, of these articles would have been available to a stagecoach traveler of 1825 whose chief needs were food and overnight lodging. The complete list of the items specified appears at 366 S.W.2d 326. In this posture the court sua sponte re-examined the validity of §§ 563.720 and 563.730 and held that the statutes were so vague and indefinite that they were incapable of rational enforcement and, therefore, invalid.

The General Assembly of Missouri, which was in session when Harvey was decided, promptly addressed itself to the enactment of new legislation in keeping with the Missouri Supreme Court decisions and the public demand for laws to curb the upsurge of Sunday business activity that followed the Harvey decision. Both Katz and Harvey rendered it imperative that the new Act be more specific and definite than the old. The General Assembly was faced with the choice of undertaking to prepare a comprehensive list of articles of necessity that could be sold or to specify commodities that could not be sold. The General Assembly chose the latter course and enacted the law modeled after the 1959 Pennsylvania Act which Two Guys had held not unconstitutional.

In Two Guys the United States Supreme Court adopts from McGowan without restatement the standards for evaluating legislative compliance with the constitutional requirements of equal protection and due process as set out at 366 U.S. 425–426, 81 S.Ct. 1105, 6 L.Ed.2d 393: "The standards under which this proposition is to be evaluated have been set forth many times by this Court. Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. [Citing cases.]"

In a footnote to the above quotation, the Supreme Court further stated, 366 U.S. page 426, 81 S.Ct. 1105, 6 L.Ed.2d 393: "More recently we declared: 'The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Tigner v. State of Texas, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086. The legislature may select one phase of one field and apply a

remedy there, neglecting the others. A. F. of L. v. American Sash Co., 335 U.S. 538, 69 S.Ct. 258, 93 L.Ed. 222. The prohibition of the Equal Protection Clause goes no further than the *invidious discrimination.'* Williamson v. Lee Optical, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563. (Emphasis added.)"

Appellants' contention that Missouri abandoned its legislative policy of maintaining Sunday as a day of rest and tranquility by repealing five statutes relating to Sunday laws is without merit. The legislative intent to continue such policy is expressed by the declaration in the title that the purpose is to repeal the five sections named "relating to proscribed activities and conduct on Sunday and exceptions thereto, and to enact one new section in lieu thereof *relating to the same subject."* Emphasis added. Two of the statutes repealed, §§ 563.720 and 563.730, had been held invalid in Harvey. Both Katz and Harvey had cast doubt on the validity of § 563.690 because of the presence of the exception in general terms "other works of necessity". With respect to Sunday labor generally, organized labor as well as individuals have discouraged it and business and industry have come to recognize a day of rest as conducive to greater efficiency of the employees. The result was that at the time in question a large segment of industry and business practiced Sunday closing apart from legal compulsion. So far as hunting on Sunday is concerned, there has been no serious attempt to enforce that part of § 563.690 for years and the prohibition has been of doubtful validity since 1936 when the self-executing provisions of § 40 of Art. 4 of the Missouri .Constitution were adopted vesting control of game and the hunting season in the Conservation Commission. Section 563.700 provided exceptions to § 563.690 and was useless without the latter. The Sunday activities prohibited by § 563.710 were regulated by later laws. Since 1870 cockfighting has been prohibited entirely in Missouri by what is now § 563.660. Horse racing on a public road is prohibited at all times, § 564.510, and bookmaking and betting on horse races is entirely prohibited, § 563.350, so that horse racing even on week days presents no problem in Missouri. Since 1895 there have been laws regarding horse races conducted by agricultural and fair associations in particular. Sections 561.820–561.850. Except as playing at cards or games runs afoul of gambling laws, these activities are now recognized as wholesome recreation.

The repeal of the five statutes, however, did not annul all legislative recognition of Sunday as a day of respite from labor and business activity. The following statutes recognize that there is generally a cessation of business, legal and judicial activities on Sunday; §§ 1.040, 9.010, 63.063 (RS Mo Supp.1961), 288.240, 362.520, 401.085, 401.194, 476.250, 482.140, 506.060, and 521.-050. Section 216.340(5) provides that no person confined in a state correctional institution shall be required to do any work on Sundays or holidays, excepting necessary work for the state. Sections 311.296 and 311.480, subd. 3 restrict the sale of intoxicating liquor on Sunday and were in force when § 563.720, which, among other things, proscribed the sale of liquor on Sunday, was repealed.

The repeal of the five statutes in question was a forthright effort to rid the statute books of provisions which had been declared invalid or were of doubtful validity and others which had been superseded or had become obsolete. The new section, 563.721, was intended as a modern replacement capable of being enforced. There was no legislative intent to abandon the public policy of constituting Sunday as a day of rest and recreation.

The plaintiffs, however, assert that the new Act is unconstitutional in that it bears no valid relationship to a proper exercise of the police power to achieve a day of rest and recreation for the general good of mankind. They say the Act is fatally defective because it does not include a "prohibition against worldly employment"

on Sunday. The new Act and other statutes indirectly prevent or avoid Sunday labor in that they prohibit the conduct on that day of business activities and large retail operations which require large sales forces and other employees. On the other hand, recreational activities and facilities have been encouraged and in some cases provided by state and federal governments for the health and welfare of the people. Such activities require a large number of service and maintenance employees whose Sunday labor cannot be proscribed if the cause of recreation is to be served. Then too there are many present-day activities which by reason of their nature or need cannot be halted a day each week. In the same vein the plaintiffs complain that the Act discriminates against them in that it makes lawful every variety of secular pursuit except the retail sale of selected goods. It is evident that a blanket prohibition against all labor and all secular pursuits would require many exceptions. Such a list of exemptions would be quite lengthy and difficult to compile. It has not been demonstrated that such an approach would produce a more satisfactory result than the method the General Assembly adopted which is to apply prohibitions where the need appears and to leave the remainder unregulated.

■ The constitutional requirements of due process and equal protection of the laws as interpreted by the Supreme Court of the United States are binding on this court. Nevertheless, decisions of this state are in harmony with the federal cases. See ABC Liquidators, Inc. v. Kansas City, Mo., 322 S.W.2d 876. As quoted above from McGowan v. Maryland, 366 U.S. 425–426, 81 S.Ct. 1104–1105, 6 L.Ed.2d 393, the Fourteenth Amendment permits the states a wide scope of discretion in enacting laws which may affect some group of citizens differently than others. The state legislatures are presumed to have acted within their constitutional power despite the fact that in practice their laws result in some inequality. The consti-

tutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective. Particularly pertinent here are the pronouncements that a reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind; that the legislature may select one phase of a field and apply a remedy there, neglecting the other; that evils in the same field may be of different dimensions and proportions, requiring different remedies; that the equal protection clause goes no further than to prohibit an *invidious* discrimination; that a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. Adjudged by these standards, the 1963 Act does not violate the due process and equal protection provisions of the state or federal constitution and we so hold.

■ The plaintiffs' other contention is that the 1963 Act violates Art. 3, § 40(30) of the Missouri Constitution which provides that the General Assembly shall not pass any local or special law "where a general law can be made applicable, and whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on that subject." This proposition is related in some respects to the ones just disposed of. We have ruled that by repealing five existing statutes and in enacting a new one in lieu thereof relating to the same subject, the Act did not repudiate the legislative policy of constituting Sunday a day of rest and recreation. Also the question of whether the Act is special in violation of § 40(30) of Art. 3 involves an inquiry into classification of legislative subjects which is similar in some respects to that required in determining if the equal protection provisions of the state and federal constitutions have been violated. See Walters v. City of St. Louis, 364 Mo. 56, 259 S.W.2d 377, affirmed 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660, State ex inf. McKittrick ex rel. Ham v. Kirby, 349 Mo. 988, 163 S.W.2d 990, 994 [3],

and Hawkins v. Smith, 242 Mo. 688, 147 S. W. 1042, 1044 [4].

Under this point the plaintiffs rely chiefly on these two cases. In McKaig v. Kansas City, 363 Mo. 1033, 256 S.W.2d 815, a city ordinance prohibiting automobile dealers from keeping their places of business open on Sundays and on six specified legal holidays was held to be a special law in violation of Art. 3, § 40(30), of the Missouri Constitution. In City of Springfield v. Smith, 322 Mo. 1129, 19 S.W.2d 1, a city ordinance prohibiting any person from keeping open on Sunday any theatre, playhouse, or any other place where theatrical performances, vaudeville shows or moving picture exhibitions are given or conducted was held to be violative of the constitutional provision against special laws. The ordinances in these two cases were held unconstitutional because other businesses similarly situated were not included. The demands of the constitutional provision prohibiting a local or special law where a general law can be made applicable are satisfied if the statute in question includes all who are similarly situated and omits none whose relationship to the subject matter cannot reasonably be distinguished from those included. McKaig v. Kansas City and City of Springfield v. Smith recognize and apply this rule but the cases are not controlling on the facts of the present case.

The General Assembly may classify with reference to a particular evil to be prevented without covering the whole field of possible abuses, and legislation designed to prevent one evil is not void because it does not prevent another. City of Springfield v. Stevens, 358 Mo. 699, 216 S.W.2d 450, 458 [18–20]. The appellants complain that the Act "permits every other gainful activity to be pursued on Sunday" and that the appellants and the items they are forbidden to sell on Sunday "are similarly situated to every other inherently lawful trade and business in Missouri." The Sunday Sales Law never applied the standard for which the plaintiffs contend and the new Act is

not required to do so. The Act is not invalid if it does not include within its prohibitions the retail sale of drugs, medicines, provisions or other commodities which are necessary or which may contribute to Sunday as a day of rest and recreation. In formulating the legislation, the Legislature had a novel and difficult task; the courts can interfere with the enactment only if the General Assembly has transcended its legislative power.

The plaintiffs have failed to demonstrate that the Legislature has unreasonably or arbitrarily failed to include activities or commodities similarly situated or omitted any which cannot be reasonably distinguished. We hold that the enactment is not a special law in violation of Art. 3, § 40(30) of the Constitution. Marshall v. Kansas City, Mo., 355 S.W.2d 877, 884 [12–14]; Borden Company v. Thomason, Mo., 353 S.W.2d 735, 766 [36].

 We have been favored with briefs by amici curiae. The Missouri State Labor Council, AFL-CIO, is a federation of local labor unions, 824 in number, composed of approximately 300,000 individuals employed in all segments of industries and all geographical areas of the state. In its brief the Council states that it worked for the enactment of the Bill in the General Assembly and, as amicus curiae, it adopts and supports the position of the respondents. The general counsel for Katz Drug Company as amicus curiae asserts that the legislation, if valid, will jeopardize the operations of the company's 26 stores in this state and supports the plaintiffs' claim of constitutional invalidity. The general counsel for Katz further contends that the Act is so vague and indefinite that it is unconstitutional which is an issue not presented by any party to the action. An amicus curiae cannot inject new issues into the case and the court will not pass on grounds of invalidity urged by an amicus curiae but not presented by the parties. Rider v. Julian, 365 Mo. 313, 282 S.W.2d 484, 497 [21–23]; Laret Investment Co. v. Dickmann, 345 Mo. 449, 134 S. W.2d 65, 70 [11].

The issues properly presented on appeal have been considered and found to be without merit. Accordingly the judgment is affirmed.

All concur.