Jerome L. HOWE et al., Appellants,

v.

CITY OF ST. LOUIS, a Municipal Corpora-
tion, et al., Respondents.

No. 56852.

Supreme Court of Missouri,
Court en Banc.

July 22, 1974.

Motion for Rehearing or Transfer to Court
en Banc Denied Jan. 14, 1974.

**128**

Cook, Murphy, Lance & Mayer, Samuel B. Murphy, Francis M. Barnes, III, Robert J. Koster, St. Louis, for appellants.

Robert W. Van Dillen, City Counselor, Eugene P. Freeman, Associate City Counselor, St. Louis, for respondents.

STOCKARD, Commissioner.

This is an appeal by plaintiffs from the judgment of the Circuit Court of the City of St. Louis in which the petitions in two consolidated cases were dismissed and injunctive relief denied. Appellate jurisdiction is in this court because the validity of two ordinances of the City of St. Louis are challenged on constitutional grounds.

The provisions of the two ordinances, material to the issues on this appeal, are as follows:

Ordinance No. 55381, as amended.

"Section One. It shall be unlawful for any person to go in or upon any private or multiple family residence located in [certain enumerated zoning districts] to solicit or encourage the owner or owners, or occupant or occupants thereof, to sell, offer for sale, or list such property, or to move therefrom, or to solicit or encourage such action by the use of 'flyers,' 'circulars,' let-

ters, or similar material delivered without having been requested to do so by the owner or owners or occupant or occupants of such residence.

\* \* \* \* \* \*

"Section Two (c)(i). Notwithstanding Section One, hereof, the Council shall on the application of any person, firm or corporation, grant such person, firm or corporation, a permit to solicit sales or listings within the area specified in the permit, if it shall find that such solicitation within the requested area will not result in, or cause a representation that any block, neighborhood or area has undergone, will or might undergo, a change with respect to the religious, social, or nationality composition of the block, neighborhood, or area which would discourage the purchase or encourage the sale of any property in a particular area because of such real or possible change.

\* \* \* \* \* \*

"Section Four. Nothing herein shall be deemed to prohibit any person from advertising or soliciting properties or listings in any newspaper, or radio, or television, or magazine, or from advertising through such means properties available for purchase or rental or lease."

Ordinance 55382, as amended.

Section One. Notwithstanding Section 740.010 and Section 740.020 [the substance of these sections is not in the record before us] it shall be unlawful for any person to place any sign on property, public or private, located in [the same zoning districts enumerated in Ordinance No. 55381] which such sign indicates that any property is such zoning district is 'for sale,' 'open' for inspection, or otherwise available for purchase, or that any property in such zoning district has been 'sold,' either directly by or from the owner or by or through a real estate agent or broker.

\* \* \* \* \* \*

"Section Two (c)(i). Notwithstanding Section One, hereof, the Council shall on

the application of any person, firm or corporation, grant such person, firm or corporation, a permit to solicit sales or listings within the area specified in the permit, if it shall find that such solicitation within the requested area will not result in, or cause a representation that any block, neighborhood or area has undergone, will or might undergo, a change with respect to the religious, social, or nationality composition of the block, neighborhood, or area, which would discourage the purchase or encourage the sale of any property in a particular area because of such real or possible change."

The stated purpose of Ordinance 55381 is "to prohibit persons from interfering with the peaceful possession of owners and occupants of residences" in the enumerated zoning districts "by the use of certain methods to solicit or encourage such owners or occupants to sell or move from such residences." The stated purpose of Ordinance 55382 is "to prohibit real estate 'for sale,' 'open,' and 'sold' signs within certain zoning districts."

Both ordinances contain a provision for an appeal from an adverse decision, and for a review "as provided by law for the review of administrative decisions."

In the petition challenging the validity of Ordinance 55381 the plaintiffs are nine corporations "licensed to engage in the real estate business" who seek to represent all other corporations engaged in their business as a class, and ten "individuals licensed to engage in the real estate business as brokers or agents," who seek to represent all others engaged in the same business as a class. In the petition challenging the validity of Ordinance 55382, the plaintiffs are seven of the individuals named as plaintiffs in the other suit who are "licensed to engage in the real estate business as brokers or agents" who seek to represent all others engaged in their business as a class; the same nine corporations named as plaintiffs in the other suit, who seek to represent all others engaged in their business as a class; and four persons who sue "on behalf of themselves only" as owners of real property in the City of St. Louis.

We need not detail the evidence. It is sufficient to say that plaintiffs presented eight witnesses, seven of whom were licensed real estate brokers or agents engaged in the real estate business in the City of St. Louis. All of these persons testified that prior to the enactment of the two ordinances in the furtherance of their business they had engaged in some or all of the activities prohibited by the ordinances; that is, telephone, personal, and mail solicitations, and the placing of for sale signs on property which contained the name of the real estate company representing the owner. The evidence also was to the effect that expenditures for newspaper advertising had increased after the enactment of the ordinances, presumably because it was necessary to turn to that form of permitted advertising. The eighth witness, who was not one of the individual plaintiffs, testified that she was the owner and a former resident of property in one of the enumerated zones, and had attempted to sell her property without success. She applied by telephone for a permit to place a "for sale" sign on the property and was refused. No appeal was taken.

The trial court held: "The plaintiffs have not shown grounds for equitable or declaratory relief. Further, no violation of the plaintiffs' constitutional rights have been shown through the enactment or enforcement of City of St. Louis Ordinance 55381 [as amended], and City of St. Louis Ordinance 55382 [as amended]," and it entered judgment dismissing plaintiffs' petitions.

Both ordinances have as their purpose to prevent what has been termed as "block-busting," which has been described as a process through which individuals engaged in the real estate business stimulate and prey "on racial bigotry and fear by initiating and encouraging rumors that negroes * * * [are] about to move into a giv-

en area, that all non-negroes * * * [will] leave, and that the market values of properties * * * [will] descend to 'panic prices' with residence in the area becoming undesirable and unsafe for non-negroes." Contract Buyers League v. F. & F. Investment, 300 F.Supp. 210 (N.D.Ill. 1969).

Appellants first contend that the two ordinances "abridge the individual right of free speech" as guaranteed by the Constitutions of the United States and Missouri. There can be no question but that the ordinances do abridge speech. But the issue is whether that abridgement is in contravention of appellants' constitutional right of free speech.

■ Preliminary to the consideration of the precise issues before us, we expressly hold that those issues, as to the validity of Ordinance 55381, do not include the question whether an individual citizen, who is not a real estate broker or salesman acting in furtherance of a business enterprise, may engage in the proscribed conduct. There is no such individual named as plaintiff in the petition challenging the validity of Ordinance 55381. As to Ordinance 55382, four persons are named as plaintiffs who alleged that they "own real property in the City of St. Louis," and that they have sued "on behalf of themselves only." They do not allege that they own property "in zoning districts A, B, C, or D," which are the only areas to which the restrictions of the ordinance apply. At trial none of these four plaintiffs testified, and there is no evidence from which it may be found that the proscriptions of the ordinance have adversely affected any of them. Our subsequent use of the term "appellants" will refer to the plaintiffs in each petition other than those four individuals, because as to them there is a total lack of proof from which there can be found a standing to challenge Ordinance 55382.

■ The acts or conduct of appellants prohibited by the ordinances pertain to advertising or other conduct related solely to a commercial activity as distinguished from the dissemination of ideas or information outside of what has been termed the "commercial sector," which has been "roughly" defined as "the production and exchange of goods and services for profit, as distinct from the production or exchange of ideas on political, religious, artistic and similar matters." Emerson, The System of Freedom of Expression, p. 414–415 (1970). "It is now well settled that while 'freedom of communicating information and disseminating opinion' enjoys the fullest protection of the First Amendment, 'the Constitution imposes no such restraint on government as respects purely commercial advertising.'" United States v. Hunter, 459 F.2d 205, 211 (4th Cir. 1972). Cited in support are such cases, among others, as Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942); Breard v. City of Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951). See also, United States v. Bob Lawrence Realty, Inc., 474 F.2d 115 (5th Cir. 1973).

The Hunter and Bob Lawrence Realty cases pertained to the validity of § 3604(e) of the Fair Housing Act of 1968, which prohibited "for profit" certain acts and conduct described as "blockbusting." In United States v. Mintzes, 304 F.Supp. 1305 (D.Md.1969), it was stated that "The words 'for profit,' as used in section 3604(e) * * * were evidently included in § 3604(e) to distinguish and eliminate from the operation of that subsection statements made in social, political or other contexts, as distinguished from a commercial context, where the person making the representations hopes to obtain some financial gain as a result of the representations." Relying on the difference between the protected expression of ideas and conduct in the commercial sector federal district courts "have uniformly held that § 3604(e), banning blockbusting practices, does not contravene the First Amendment." United States v. Hunter, 459 F.2d 205, 212 (4th Cir. 1972). The wording of the ordinances in this case are not so limited,

but appellants did not plead nor prove that either ordinance proscribed any act or conduct proposed to be taken *by them* except those to be taken "for profit," or in the commercial sector.

In the Bob Lawrence Realty case, supra, the court there pointed out that "The only 'speech' proscribed by § 3604(e) is commercial speech made to gain profit from racial representations. If § 3604(e) were to reach a non-commercial statement, a political statement, or a purely informational statement, it would naturally be subject to First Amendment attack." We are not called upon in this appeal to determine whether the ordinances sweep too broadly as to "noncommercial speech." That issue is not before us. The only acts or conduct of appellants proscribed by the ordinances are forms of "speech" within the commercial sector. We find no constitutionally prohibited abridgement of speech as to appellants.

■ In their second and third points appellants abstractly assert that Ordinance 55382 deprives them of their property without due process, and that both ordinances deprive them of equal protection of law. No authority is cited in support of the due process contention, and in neither point do they set forth how or in what manner they have been deprived of due process or have been denied equal protection of law.

In the argument under point II appellants assert that to "display a 'for sale' sign is certainly a reasonable means to enjoy and express a right incidental to ownership," and that "it is [their] position that the right to sell is a fundamental and guaranteed right which cannot be limited when exercised reasonably, even though it may affect others adversely."

This argument apparently is premised on the theory that the right to own and dispose of property is a right not subject to government interference. The argument is unsound. Private property rights are not absolute. They are always subject to the reasonable exercise of the police power. As was said in Nebbia v. People of State of New York, 291 U.S. 502, 523, 54 S.Ct. 505, 510, 78 L.Ed. 940 (1934): "Under our form of government the use of property and the making of contracts are normally matters of private and not of public concern. The general rule is that both shall be free of government interference. But neither property rights nor contract rights are absolute; for government cannot exist if the citizen may at will use his property to the detriment of his fellows, or exercise his freedom of contract to work them harm. Equally fundamental with the private right is that of the public to regulate it in the common interest." In the State's exercise of its police power it has placed numerous restrictions upon the property owner's right to use land and property as he chooses. For example, and to name but a few, the law of nuisance, easements by necessity, sanitary regulations, the law of surface water, building codes, and zoning ordinances. All have been recognized as legitimate restrictions on the use of private property. More directly related to the issue before us are the rule against perpetuities, the rule against devising property subject to a condition contrary to public policy, and the rent ceiling laws. All are examples of legitimate police power restrictions upon the right of a private property owner to dispose of his property as he chooses. The result is that "the private property owner has the right to use and dispose of his property as he chooses *only* so long as his action is not contrary to the general welfare." David v. Vesta Co., 45 N.J. 301, 212 A.2d 345, 350 (1965).

Appellants do not assert that the prohibitions of the ordinances, as they apply to them, are not a valid means of eliminating or reducing the evils to which the ordinances are directed, except that the ordinances deny them free speech and equal protection of law. We have ruled the issue as to free speech, and we turn now to the contention that the ordinances deny appellants equal protection of law.

As previously noted, we must look to appellants' argument in their brief to determine the substance of their contentions. It is there argued that the ordinances "deny equal protection of the law to citizens of the same community, discriminate against one, and only one lawful business activity, and, within one business, further discriminate against the smaller enterprise with less economic resources at its disposal." They also argue that the "sign ordinance unreasonably denies equal protection to those who wish to sell their property, as only 'for sale' signs, or signs of like import, are prohibited. 'For lease' or 'for rent' signs are in no way restricted."

■ The legislative branch of the City of St. Louis has determined that in order to eliminate or reduce the evils of "blockbusting" the restrictions or proscriptions provided for in the ordinances should, in the interest of the public welfare, be put into effect. The rules for judicial review of a legislative classification which is challenged as a denial of equal protection are well settled. The equal protection clause does not forbid a State to create classes in the adoption of regulations under its police power, but it allows wide discretion, precluding only that done without any reasonable basis and therefore arbitrary, or as otherwise stated, it forbids invidious discrimination. Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); Kansas City v. Webb, 484 S.W.2d 817 (Mo.). Discrimination is arbitrary and unconstitutional if the classification rests upon a ground wholly irrelevant to the achievement of the legislative objective. Gem Stores, Inc. v. O'Brien, 374 S.W.2d 109 (Mo.Banc 1963). "Classification of the subjects of legislation is not prohibited by the equal protection of the law clauses of the United States and State Constitutions 'if all within the same class are included and treated alike.'" Kansas City v. Webb, supra; Burns v. Swenson, 430 F.2d 771 (8th Cir. 1970).

The ordinances do not, in fact, create a class consisting of the real estate business.

They apply to all persons. It is true that the business in which appellants are engaged may not be followed by persons not licensed, and the effect is that, at least as far as appellants are concerned, the ordinances do apply to the real estate business as a class. However, the real thrust of the ordinances is toward conduct or activity regardless of whom engages in such conduct or activity.

■ The purpose of the ordinances, the elimination or reduction of the practice of "blockbusting," is a legitimate objective, it is within the legitimate scope of the police powers, and the classification of the conduct or activity proscribed in the ordinances, even though appellants are primarily affected, is a reasonable basis to effect the objective of the legislation. We find no denial of equal protection of law.

Appellants' final point is that the ordinances are "vague and indefinite and incapable of uniform enforcement." They rely, according to the argument under this point, on the fact that the ordinances grant Council on Human Relations the right upon application to issue permits "if it shall be found that such solicitations within the requested area (or the placing of such signs) will not result in or cause a representation that any block, neighborhood or area has undergone, or will undergo a change with respect to the religious, racial or national composition of the block, neighborhood or area which would discourage the purchase or encourage the sale of any property in a particular area because of such real or possible change."

■ We do not consider the ordinances to be "vague." They clearly set forth the proscribed activity. The ordinances are directed to a particular objective and they give "fair notice to whom [they are] directed." American Communications Association v. Douds, 339 U.S. 382, 412, 70 S. Ct. 674, 94 L.Ed. 925 (1950).

Appellants' argument in support of their contention that the ordinances are "incapa-

ble of uniform enforcement" is that a "legislative body cannot delegate its authority" and that the Council on Human Relations is given the "impossible task of attempting to predict how an undetermined number of unknown individuals will react emotionally to the appearance of a 'for sale' sign or to a solicitation for a listing."

 "It is axiomatic that a legislative body cannot delegate its authority, but alone must exercise its legislative functions." Automobile Club of Missouri v. City of St. Louis, 334 S.W.2d 355 (Mo. 1960). However, it may empower certain officers, boards and commissions to carry out in detail the legislative purposes and promulgate rules by which to put in force legislative regulations. "It may provide a regulation in general terms, may define certain areas within which certain regulations may be imposed, and it may empower a board to ascertain the facts as to whether the location affected comes within the general regulation or within the designated or described area or zone." Automobile Club of Missouri v. City of St. Louis, supra at p. 358. While it is true that an ordinance which " 'attempts to clothe an administrative officer with arbitrary discretion, without a definite standard or rule for guidance' " is unconstitutional, Porporis v. City of Warson Woods, 352 S.W.2d 605 (Mo.1962), we do not consider that to be the situation in this case. As a "qualification" of this rule it is held that " 'where the discretion to be exercised relates to police regulations for the protection of public morals, health, safety, or general welfare, and it is impracticable to fix standards without destroying the flexibility necessary to enable the administrative officials to carry out the legislative will, legislation delegating such discretion without such restrictions may be valid. * * * The modern tendency of the courts is toward greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of the laws as the complexity of governmental and economic conditions

increases.' " Milgram Food Stores, Inc. v. Ketchum, 384 S.W.2d 510, 514 (Mo.1964). The ordinances in this case authorize the Council on Human Relations to permit solicitation or the placement of signs when it determines as a fact that certain expressly stated conditions exist. The ordinances provide a guide and standards within which the above mentioned authority may be exercised, and in this manner interested persons are protected from arbitrary action. We note also that an appeal is provided from an adverse ruling.

We conclude that the ordinances are not invalid as to appellants for any reason asserted by them. Therefore, the judgment is affirmed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court en Banc.

SEILER, MORGAN, HOLMAN and HENLEY, JJ., concur.

DONNELLY, C. J., concurs in result.

FINCH, J., concurs in part and dissents in part in separate opinion filed.

BARDGETT, J., concurs in part and dissents in part and concurs in separate opinion of FINCH, J.

FINCH, Judge (concurring in part and dissenting in part).

I concur in result with the principal opinion insofar as it holds Ordinance 55381 (the anti-solicitation ordinance) valid. However, I cannot concur with reference to its conclusion with respect to Ordinance 55382. Capsulated, that ordinance says that because certain persons including real estate brokers and agents have used "For Sale," "Open," and "Sold" signs to create the impression of rapid racial integration of

residential neighborhoods resulting in racial unrest and neighborhood deterioration and financial loss and because of loss in population and taxes, no person may place any such "For Sale," "Open," or "Sold" signs on any property public or private located in zone districts A, B, C, or D,[1] unless the person first makes application and pays a fee to the St. Louis Council on Human Relations and is then granted permission for such sign by that council. In order to award such permit, the Council must make a finding that the placing of the sign will not "cause a representation that any block, neighborhood or area has undergone, will or might undergo, a change with respect to the religious, social or nationality composition of the block, neighborhood or area which would discourage the purchase or encourage the sale of any property in a particular area because of such real or possible change."

I cannot concur that said ordinance is valid even though I recognize that the principal opinion expressly limits its holding to the ordinance as it pertains to persons engaged in the real estate business and reserves for another time the question of its validity as it relates to individual persons placing signs with reference to their own property.[2]

Ordinance 55382 does not limit the posting of signs to those which are posted for the purpose of or which are found to have the effect of blockbusting or panic selling. So long as the property is within zones A through D, the posting of such signs is prohibited. It makes no difference whether the house in question is occupied or vacant (or for that matter whether other houses in

the block or neighborhood are occupied or vacant); whether other signs are posted; whether the house is located in an old or a new subdivision (or whether the house itself is old or new); whether there are other residences in that block or neighborhood; or what the existing racial composition of the block or neighborhood is. It is a flat, all inclusive prohibition of "For Sale," "Open," or "Sold" signs (unless the Council of Human Relations grants permission following application).

I have no quarrel with an ordinance which undertakes to prevent blockbusting or panic selling by prohibiting signs which would have such effect.[3] However, every sign of this character in zones A through D will not have such effect and many do not even have that potential. I consider it to be unreasonable to prohibit all such signs unless the owner goes to city hall, pays a $5 fee and then awaits action on his application by the Council on Human Relations. The ordinance as drafted utilizes a sledgehammer approach. It reminds one of the proverbial act of throwing out the baby with the bath water in order to get rid of the bath water.

This ordinance is discussed at some length in the comment in the St. Louis University Law Journal referred to in footnote 1, supra. In its conclusion at p. 717, that article, without reaching any final conclusion of its own, points out that this ordinance is susceptible to challenge on several constitutional grounds. In part it states:

"The ordinance enacted by the City of St. Louis to prohibit blockbusting by regulation of real estate signs is sus-

---

1. According to a comment in 14 St. Louis University Law Journal 686, 717 entitled "The Constitutionality of a Municipal Ordinance Prohibitng 'For Sale,' 'Sold,' or 'Open' Signs to Prevent Blockbusting", all but ten to fifteen per cent of all private residences within the city are located in zone districts A through D.

2. I recognize also that a rather similar ordinance was approved in Barrick Realty, Inc.

v. City of Gary, Indiana, 354 F.Supp. 126 (N.D.Ind.1973), aff., 491 F.2d 161 (7th Cir. 1974).

3. The parties seem to agree that the City of St. Louis earlier adopted such an ordinance but apparently have not attempted to enforce it.

ceptible to challenge on several constitutional grounds. The accomplishment of its objective may be beyond the power of the City. The methods chosen to accomplish the purpose, even if otherwise valid, may violate limitations on municipal power embodied in the due process and equal protection clauses of the State and federal constitutions. It may violate constitutional provisions prohibiting undue restrictions on freedom of expression. And it may distribute authority to accomplish its purposes contrary to basic theories of how governmental power must be divided.

"The purpose sought seems not only well within the City's power but also highly commendable, and perhaps, even essential to the City's continued viability. A challenge based on freedom of expression would seem to lack substance because of the commercial nature of the expressions sought to be regulated.

"The ordinance as originally enacted is quite broad in its coverage. It appears to regulate areas of the City which do not need regulation to prevent blockbusting, and it applies to brokers and property owners who do not engage in blockbusting as well as to those who do. Thus, it may not meet those due process standards requiring legislation to be reasonable and non-arbitrary, and it may violate equal protection limitations by being over-inclusive. However, there does appear to be a tendency to uphold municipal legislation directed at ending discrimination in housing and eliminating blockbusting. Therefore, depending upon the amount of discretion a court is willing to allow the legislative body, the original enactment may be upheld. The amended version is narrower in its scope and would seem to be much less objectionable on the grounds of arbitrary or unreasonable action or over-inclusiveness. It does, however, present a problem as to whether the legislative body established sufficient standards for the administrative agency's guidance in applying it."

I see no point in lengthening this dissent by exploring some of these other constitutional issues. Suffice it to say that they raise serious additional questions with respect to this ordinance. Furthermore, I do not entirely subscribe to the statement in the conclusion above that a challenge based on freedom of expression probably is unavailable on the theory that the sign posted by the property owner is commercial speech. I have no difficulty with the view that such signs when posted by those in the real estate business are commercial speech but find it hard to classify a mere statement by the owner of a single family residence that he wants to sell his house or that it is open for inspection as commercial speech and hence unprotected.

BARDGETT, J., concurs.