SOUTHERN MISSOURI AND ARKANSAS RAILWAY COMPANY et al., Appellants, v. WOODARD, McKINNEY et al.

In Banc, February 26, 1906.

1. **CONDEMNATION: Exceptions: Order Setting Aside Report: Right of Jury Trial: Corporation.** The statute does not require a formal order setting aside the report of commissioners in a condemnation proceeding as preliminary to a hearing before a jury. Upon the coming in of the report and the filing of exceptions thereto in due time, after notice, the exceptor has the constitutional right to have his damages assessed by a jury, and the court has no discretion in the matter. The calling of a jury to assess his damages is such an order as "right and justice require."

   *Held,* by Marshall, J., dissenting, first, that the construction heretofore placed on the two different sections of our Constitution, in effect guarantees to a corporation, where its

property is sought to be condemned for public use, the right of trial by jury in all cases, whereas when the property of individuals is sought to be condemned his right to a jury trial is subject to prior assessment by a commission of freeholders, and thus a discrimination is by judicial construction made in behalf of corporations; second, that section 4 of article 12 of our Constitution is not inconsistent with or an exception to the general provisions contained in section 21 of article 2, and, if properly construed, corporations are no more entitled to trial by jury than are individuals, in any condemnation case, except where the purpose of the condemnation proceeding is to take away all the property *and franchises* (that is, its right to exist) of a corporation; third, the doctrine of *stare decisis* is not as important as the doctrine that all men are equal before the law.

2. ———: Damages: Opinion of Witness: Question. Persons shown to be acquainted with the value or damages to property through which the proposed railroad is to pass, may, in connection with the facts, state their opinion as to such value or damage. And the question propounded in this case is held to be adapted to the facts and to correctly state the basis for an opinion.

3. ———: ———: Instruction: Words "If Any." The fact that the words "if any" used in an instruction in reference to the amount of damages, are not thereafter continuously repeated in other instructions, is no ground for holding that the instructions assumed that the property had been damaged.

Appeal from Ripley Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED.

*E. H. Seneff, L. F. Parker* and *James Orchard* for appellants.

(1)   The motion in arrest of judgment should have been sustained. The verdict of the commissioners was never reviewed by the court; never set aside or affirmed. Under Revised Statutes 1899, section 1268, upon the filing of the report of the commissioners the clerk wherein the same is filed shall notify the party

193 Sup—42

whose property is affected of the filing thereof, and the report of said commissioners may be reviewed by the court in which the proceedings are had on written exceptions filed by either party in the clerk's office within ten days after the service of the notice aforesaid, and the court shall make such order therein as right and justice may require, and may order a new appraisement on good cause shown. Such new appraisement shall, at the request of either party, be made by a jury under the supervision of the court, as in an ordinary case of inquiry of damages, etc. So, under that section, it is necessary for the court to review the report of the commissioners and to set the same aside on a proper showing. The finding of the commissioners appointed to appraise land to be condemned for railroad purposes is not conclusive upon the circuit court, but on written exceptions filed by either party the court may examine the evidence, and if the verdict of the commissioners was wrong, may set it aside. Bridge Co. v. Schabacker, 49 Mo. 555. In the case at bar no such inquiry was made and no order of the court was made setting aside the verdict of the commissioners, so the finding of the commissioners is still in force. Bridge Co. v. Ringe, 58 Mo. 491; St. Louis v. Lanigan, 97 Mo. 175; Railroad v. Richardson, 46 Mo. 456; Railroad v. McGrew, 113 Mo. 390. (2) In an action for damages it is not competent for a witness to state the sum which he thinks is the plaintiff's damage, because, even if the witness is an expert in the particular subject, he is liable to include in his general estimate elements of damages which the law does not recognize. Sale v. St. Louis, 152 Mo. 615; Hurt v. Railroad, 94 Mo. 255; Watkins v. Railroad, 44 Mo. App. 245; Suspensor v. Railroad, 120 Mo. 154. And to allow a witness to give his opinion as to the amount of damages sustained in a given case is, as a general rule, usurping the general province of the jury. Saline v. St. Louis, 152 Mo. 615;

Railroad v. Knapp, Stout & Co., 160 Mo. 396; Railroad v. Shoemaker, 160 Mo. 425.   (3) The instructions given on the part of the exceptor, C. E. McKinney, are erroneous, for the reason that they assume that the exceptor's land was damaged by reason of the locating of plaintiff's road over the same.   That was one of the controverted questions before the jury.   It was, therefore, an error to give said instructions.   Railroad v. Stock Yards Co., 120 Mo. 541; Stone v. Hunt, 94 Mo. 475; Railroad v Knapp, Stout & Co., 160 Mo. 396.

*Jno. M. Atkinson* for respondents.

The first assignment of error by appellants is that the court erred in proceeding to trial without first setting aside the report of the commissioners, which is not supported by a single authority cited by appellants decided since the adoption of the present Constitution, but on the contrary the assignment of error has been held in a number of cases adverse to appellants' contention.   The latest case cited by appellants, Railroad v. McGrew, 113 Mo. 393, holds the reverse to appellants' assignment.   The exceptions in the McGrew case prayed for an assessment of damages by a jury (the same as respondent did in this case), which request was refused the railroad company, and the court held, speaking through Judge MACFARLANE, that ''sec. 4 of art. 12 of the Constitution, and sec. 2738 (now sec. 1268) of the statutes, entitled the corporation, when exercising the delegated right of eminent domain, to demand as a matter of constitutional right that the damages should be assessed by a jury,'' and stated further that, ''since the trial of the case in the circuit court the disputed question has been decided in several cases by this court,'' and cited: Railroad v. Town-Site Co., 103 Mo. 451; Railroad v. Miller, 106 Mo. 458; Railroad v. Shambaugh, 106 Mo. 557; Railroad v. Fowler, 113 Mo. 458.   The same question is found decided against ap-

pellants' contention in the case of Railroad v. Story, 96 Mo. 611. If the contention of appellants be true, that under the statute the report of the commissioners must first be set aside for cause before a jury is called to assess damages, and the trial court should refuse to set aside such report, then the statute would be in direct conflict with the constitutional right, and of course the statute must fall as was said by the court in the Story case, supra. The trial court below did not confirm the report of the commissioners as to exceptor, and hence it must have considered same set aside, even if such be a valid requirement. If a formal order of the court below setting aside the report of the commissioners be required, the matter was so treated by both appellants and respondents and such a formal requirement was waived and cannot now be urged for the first time in this court, as the attention of the lower court was not called to the same, either during the trial or in a motion for a new trial or in arrest, and hence we conclude that the first assignment of error is without any merit, and should be ruled against appellants.

BRACE, C. J.—This is an appeal in a proceeding by a railroad company, under the provisions of article 7, chapter 12, Revised Statutes 1899, to condemn a strip of land for its use through a number of tracts or parcels of land in Ripley county; one of which belonged to C. E. McKinney, the respondent herein, who, upon the coming in of the report of the commissioners assessing his damages at one hundred dollars, after notice, in due time, filed his written exceptions thereto, in which he asked that the report of the commissioners be set aside, and that his damages be assessed by a jury. Thereupon, in due course, a jury was impaneled, before whom the issues were tried and a verdict in his favor rendered, assessing his damages at seven hundred and fifty dollars, from which judgment, in due course, this appeal was taken.

1. By section 1268 of said article 7, it is provided that: "The report of said commissioners may be reviewed by the court in which the proceedings are had, on written exceptions, filed by either party in the clerk's office, within ten days after the service of the notice aforesaid; and the court shall make such order therein as right and justice may require, and may order a new appraisement, upon good cause shown."

On the record no formal order appears setting aside the report of the commissioners, and this is assigned as error. There is nothing in this assignment. On filing his exceptions the respondent had the constitutional right to have his damages assessed by a jury, and the court had no discretion in the matter. The calling a jury to assess his damages was such order "as right and justice required." [Art. 12 sec. 4, Const. 1875; Railroad v. McGrew, 113 Mo. 390; Railroad v. Story, 96 Mo. 611.]

2. It is next contended that the court erred in permitting witnesses for respondent to give their opinion as to the amount of the damages to respondent's land in answer to the following questions:

"Q. I will ask you, taking into consideration the quantity of land taken for the right of way, which is agreed to be six and one-half acres, the size, shape and disfigurement, if any, of the tracts into which the farm is divided, as its market value may be affected by that division into those sizes, shapes and disfigurements, and the cuts and fills on that tract, if any, and the difficulties, if any, of getting from one side to another by going to a railroad crossing to get over from one side to another, and excluding all elements of damage, if any, that may arise from or be due to smoke or noise from trains passing over the road, or the ringing of bells or sounding of whistles, and scaring, frightening or killing of animals while on the right of way, or danger to the person of the owner, agent, servant, by the crossing of said road; what, in your judgment, would be the depre-

ciation in the market value of the farm on account of six and one-half acres being taken for the right of way, and other inconveniences, taking into consideration all that I have mentioned and excluding all that I have mentioned?''

It is settled law in this State that persons shown to be acquainted with the value or damages to property may, in connection with the facts, state their opinion as to such value or damages. [Railroad v. Calkins, 90 Mo. 538-543; Railroad v. De Lissa, 103 Mo. 125-130; Railroad v. St. L. Union Stock Yards, 120 Mo. 541-550; Railroad v. Donovan, 149 Mo. 93-102; Railroad v. Shoemaker, 160 Mo. 425.]

The question in this case is but a paraphrase adapted to the facts thereof, of the question in the case last cited, in which it was held that the question correctly stated the basis for an opinion of the witness as to the amount of the damages. There is nothing in this assignment.

3. The third and last contention of appellant is, that the instructions given for respondent are erroneous in that they assume that his property had been damaged. This is a hypercriticism of the instruction and seems to be based upon the fact that the words, ''if any,'' used in the first instruction, were not thereafter continuously repeated in subsequent instructions. The instructions followed approved precedents—no specific error in them has been pointed out, and there is nothing in this contention.

Finding no error, the judgment of the circuit court will be affirmed.

All concur, except that *Marshall, J.,* does not concur in paragraph 1.

### DISSENTING OPINION.

MARSHALL, J.—I feel constrained to dissent from the first paragraph of the opinion of the majority

of the court in this case.  I am unwilling to believe that
the Constitution of this State intended that where the
property of an incorporated company is to be taken
by condemnation, a right of trial by jury is guaranteed
to the corporation, and that the land of an individual,
to be taken in the same proceeding, can be taken with-
out the citizen being entitled to a trial by a jury.  I am
aware that the doctrine stated in the first paragraph of
the opinion in this case reiterates the rule heretofore
announced in this State in the cases of Railroad v.
Story, 96 Mo. 611; Railroad v. Town-Site Co., 103 Mo.
451; Railroad v. Miller, 106 Mo. 458; Railroad v. Sham-
baugh, 106 Mo. 557; Railroad v. McGrew, 113 Mo. 390;
and St. Louis v. Roe, 184 Mo. 324.  But in my judgment
all of those cases were improperly decided, and they de-
clare a rule of law that produces a special privilege in
favor of an incorporated company that is not guaran-
teed to nor conferred upon a private individual, and
I am wholly unable to agree that the framers of the
Constitution ever intended to create such a special
privilege in favor of corporations.  I am further aware
of the fact that this court has held that a municipal cor-
poration is not an incorporated company within the
meaning of section 4 of article 12 of the Constitution,
and that, therefore, where the proceeding is by a muni-
cipal corporation against an individual neither the cor-
poration nor the individual is entitled to a trial by jury,
thus again discriminating in favor of mere business
corporations even as against a political subdivision of
the State.  [Kansas City v. Vineyard, 128 Mo. 75;
Kansas City v. Smart, 128 Mo. 272.]

In my judgment section 4 of article 12 of the Con-
stitution should be construed in connection with sec-
tion 21 of article 2 of the Constitution, and reading the
whole of section 4 of article 12 together, the correct in-
terpretation thereof is, that where the proceeding by
eminent domain contemplates condemning the property
*and* franchises of an incorporated company a right of

trial by jury is guaranteed, but that where the proceeding is simply to condemn property of an incorporated company then the damages may be assessed either by a board of freeholders or by a jury, as is provided in section 21 of article 2 may be done where the property of an individual is to be taken. Such a construction as this creates no special privilege in ordinary cases in favor of corporations as against individuals and does not produce the incongruity in the law that the decisions hereinbefore referred to have created.

Section 4 of article 12 of the Constitution is as follows: "The exercise of the power and right of eminent domain shall never be so construed or abridged as to prevent the taking, by the General Assembly, of the property and franchises of incorporated companies already organized, or that may be hereafter organized, and subjecting them to the public use, the same as that of individuals. The right of trial by jury shall be held inviolate in all trials of claims for compensation, when in the exercise of said right of eminent domain, any incorporated company shall be interested either for or against the exercise of said right."

Section 21 of article 2 of the Constitution is as follows: "That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested. The fee of land taken for railroad tracks without consent of the owner thereof shall remain in such owner, subject to the use for which it is taken."

Prior to the adoption of the Constitution of 1875 the only provision of the Constitution in reference to this subject was contained in section 16 of article 1 of the Constitution of 1865, and is as follows: "That no

private property ought to be taken or applied to public use without just compensation.'' All that is now contained in section 21, following the first sentence thereof, first appeared in the Constitution of 1875. The whole of section 4 of article 12 of the Constitution was a new provision in the Constitution of 1875.

In Railroad v. Miller, 106 Mo. l. c. 460-61, BLACK, J., in considering those two sections of the Constitution and in reaching the conclusion that under section 21 of article 2 the property of a citizen might be taken and that compensation could be ascertained by a jury or a board of freeholders, but that the value of the property of any incorporated company must, under section 4 of article 12, be ascertained by a jury, said: ''The first of these sections, found in the Bill of Rights, does not guarantee to the property-owner a common law jury trial in the assessment of damages. It simply requires the damages to be assessed either by a jury or by a board of not less than three freeholders. But that section is general in its terms and must be taken in connection with section 4 of article 12, which is specific and must control as to all cases coming within its terms. The last-named section, it has been insisted on some occasions, guarantees a jury trial in those cases only where it is sought to condemn the property *or* franchises of an incorporated company; but the language quoted does not admit of so narrow and limited construction. A jury is guaranteed in *all* claims for compensation for property taken in the exercise of the right of eminent domain when any incorporated company shall be interested, either for or against the exercise of such right. It, therefore, matters not whether the incorporated company is interested either for or against the exercise of this right; for in either case either party to the suit is entitled to a jury trial at some stage of the proceedings. This is the plain language of the section, and it is useless to speculate upon the reasons for its insertion in our present Constitution. In those cases where

an incorporated company seeks to condemn the property of an individual, and in those cases where it is sought to condemn the property *or* franchises of a corporation for public use, either party to the proceeding is entitled to a jury to assess the damages. That the statute may, even in such cases, provide for the assessment of the damages by commissioners in the first instance is not questioned or doubted; but either party to the suit is entitled to a jury as a matter of right at some stage of the proceedings.''

Thus, it will be observed that, without undertaking to ascertain any reason for discriminating in favor of corporations and against individuals, and by changing the conjunctive conjunction ''and'' in section 4 of article 12 to the disjunctive conjunction ''or,'' the conclusion was reached which created a special privilege in favor of corporations that is not enjoyed by individuals in condemnation cases. This is the only extended discussion of this question in any of the adjudicated cases—all the other cases simply announce the conclusion that section 4 of article 12 guarantees to a corporation the right of trial by a jury in condemnation cases without discussing or attempting to discuss the question at all.

The underlying error in Railroad v. Miller, supra, is in changing the conjunctive conjunction ''and'' to the disjunctive conjunction ''or,'' and thereby destroying the true meaning of section 4 of article 12. The conclusion reached in that case could only have been reached by this process. When section 4 of article 12 is read in its entirety, its meaning, to my mind, is perfectly plain. It provides: ''The exercise of the power and right of eminent domain shall never be so construed or abridged as to prevent the taking, by the General Assembly, of the property *and* franchises of incorporated companies already organized, or that may be hereafter organized, and subjecting them to the public use, the same as that of individuals,'' etc. Thus it will

appear that the framers of the Constitution were pro-
viding for the appropriation by eminent domain of the
property *and* franchises of incorporated companies. In
other words, the lawmakers never intended that the
franchises of corporations should not be subject to con-
demnation the same as property of an individual. Un-
doubtedly the trend of modern authority is that fran-
chises of a corporation constitute property within the
meaning of the law, and under this construction it may
be that the franchises as well as the property of a cor-
poration would have been subject to condemnation with-
out such an express reservation of power as that con-
tained in the section quoted, and that the provisions of
section 21 of article 2 would have been all that was nec-
essary to accomplish that purpose without section 4 of
article 12. But there was a time in the law when there
was a doubt as to whether franchises of an incorporation
could be taken by condemnation, and many respectable
authorities held that the franchise of a corporation, that
is, its right to exist, constituted a contract between the
corporation and the State, which under the Federal
Constitution, could not be impaired by any action of the
State, whether that action be an attempted repeal of the
franchise or by means of condemnation proceedings.
It may have been, and probably was, owing to such con-
siderations that the framers of the Constitution of 1875
took the precaution to insert section 4 in article 12. In
other words, my construction of section 4 of article 12
is that it is only in cases where the condemnation pro-
ceeding contemplates the taking away of all the prop-
erty *and* franchises of an incorporated company that
the right of trial by jury is guaranteed. A proceeding
with such an object in view might be had either by the
State against the corporation or by another corpora-
tion, having power of eminent domain, seeking to ex-
ercise that right against another corporation, though
there are cases which hold that in the latter event one
corporation cannot by condemnation destroy the exist-

ence or take away the whole of the property and franchises of a previous existing corporation.

I have taken the pains to examine the constitutions of our sister states upon these questions, and I find that provisions similar to section 4 of article 12 down to that part of that section which speaks of the right of trial by jury, in other words, provisions reserving the right to take the property and franchises of incorporated companies the same as that of individuals, are contained in the constitutions of Alabama (art. 1, sec. 24), Idaho (art. 11, sec 8), Kentucky (sec. 195), Nebraska (art. 11, sec. 6), Mississippi (sec. 190), North Dakota (art. 7, sec. 134), Pennsylvania (art. 16, sec. 3), West Virginia (art. 11, sec. 12), and Wyoming (art. 10, sec. 9). In all of those states the right of trial by jury in all condemnation cases, whether the property taken is that of an incorporated company or that of an individual, is guaranteed by other provisions of the constitution, similar to our section 21 of article 2, except so far as that section of our Constitution allows the compensation to be ascertained by a board of freeholders. And this latter provision of our Constitution I have been unable to find in the constitution of any other State in the Union. Thus in all of these states no such discrimination or creation of special privileges in favor of an incorporated company and against a private individual exists. Such a condition exists only in the State of Missouri, and exists only by reason of what I believe to be the erroneous construction that this court has heretofore placed upon section 4 of article 12, in the doing of which it was said: "It is useless to speculate upon the reasons for its insertion in our present Constitution." A little research and a little more careful reflection would have shown that the reasons for the insertion of that provision in our Constitution forbade the construction which this court placed upon that section, and that the creation of the special privileges by such a construction was directly contrary

to every principle of government that has ever been an-
nounced in any of the constitutions of our State.

Section 4 of article 12 of our Constitution was bor-
rowed almost literally from section 14 of article 11 of
the Constitution of Illinois of 1870. The Illinois Con-
stitution on this subject reads as follows: "The exer-
cise of the power, and the right of eminent domain,
shall never be so construed or abridged as to pre-
vent the taking, by the General Assembly, of the prop-
erty and franchises of incorporated companies already
organized, and subjecting them to the public necessity
the same as of individuals. The right of trial by jury
shall be held inviolate in all trials of claims for compen-
sation, when, in the exercise of the said right of emi-
nent domain, any incorporated company shall be inter-
ested either for or against the exercise of said right."
Thus, it will be observed that section 14 of article 11 of
the Constitution of Illinois is almost identical with sec-
tion 4 of article 12 of our Constitution, the principal
difference being that in our Constitution the right of
eminent domain is reserved as to corporations that may
be hereafter organized, whereas under the Illinois Con-
stitution the literal reading of section 14 seems to con-
fine that right to incorporated companies already or-
ganized.

The Constitution of Illinois, section 13 of article 2,
is as follows: "Private property shall not be taken or
damaged for public use without just compensation.
Such compensation, when not made by the State, shall
be ascertained by a jury, as shall be prescribed by law.
The fee of land taken for railroad tracks without con-
sent of the owners thereof shall remain in such owners,
subject to the use for which it was taken."

Thus it is apparent that our section 21 of article 2
was also taken from section 13 of article 2 of the Illinois
Constitution, the only change being that under our Con-
stitution the compensation was authorized to be ascer-

tained either by a jury or a board of freeholders as the law might prescribe. Under the Illinois Constitution a jury trial is guaranteed in every case, whether the property taken be that of an incorporated company or that of a private citizen, and thus no favored class is built up under the laws of that State. The framers of our Constitution, however, saw fit, in section 21 of article 2, to authorize the compensation to be ascertained either by a jury or a board of freeholders as the law might prescribe. Were it not for the presence of section 4 of article 12 in our Constitution, the provisions of section 21 of article 2 of the Constitution would be adequate and amply sufficient to cover cases of condemnation of property whether it was owned by an incorporated company or by a private citizen, and no discrimination in favor of either would be created. The framers of our Constitution after thus making the changes noted in section 21 of article 2, and allowing the compensation to be assessed by the freeholders as well as by a jury, then borrowed from the Illinois Constitution section 4 of article 12 in reference to condemnation proceedings against incorporated companies or by such companies, and included the right of trial by jury whenever an incorporated company was interested either for or against the proceeding. In other words, copied the Illinois Constitution without noticing, if the construction heretofore put upon it by this court is the correct construction, that in so doing they were creating this discrimination in favor of corporations and against individuals.

In other words, under the Illinois Constitution which does not provide for the ascertainment of the compensation by a board of freeholders in any case but requires the trial by jury in every case, there was no such privilege created by section 14 of article 11 of their Constitution as results from the construction this court has placed upon section 4 of article 12 and section 21 of article 2 of our Constitution.

Either, therefore, we must say that the framers of our Constitution knowingly intended thus to create a special privilege in favor of corporations that was denied to private individuals, or else the construction I place on section 4 of article 12 must have been the construction intended by the lawmakers, that is, that the right of trial by jury is only guaranteed to corporations where the purpose of a condemnation proceeding is to take away the property *and* franchises of the corporation.

In my judgment to say that the framers of our Constitution ever intended to create such a special privilege in favor of incorporated companies is an unjust reflection upon the intelligence of that learned body, composed, as it was, of some of the ablest lawyers in this State, and is in absolute conflict with every other provision of the Constitution, and with the whole spirit, genius and policy of that document. The idea conveyed in the first sentence of section 4 of article 12 is that neither the property nor the franchise of an incorporated company should be beyond the reach of the power of the State by eminent domain, but that all the property and franchises of an incorporated company should be subject to condemnation, "the same as that of individuals." No intimation is contained therein of any intention to create a special privilege in favor of corporations, but on the contrary the plain purpose of the lawmakers was to place the property and franchises of an incorporated company upon the same level and plane as that of an individual. This was the dominant idea in the minds of the lawmakers, and to say that after having expressed the dominant idea they were so awkward in the use of language and so bungling in the expression of intention as in the next breath to create a special privilege in favor of incorporated companies that was not enjoyed by or guaranteed to the individual would be to do grievous wrong to the intelligence and honesty of purpose of the framers of our Constitution.

Neither will it do to say that the framers of our Constitution in enacting section 4 of article 12, by providing for the trial by jury therein guaranteed, overlooked the fact that they had so changed section 21 of article 2 of our Constitution from the manner in which it was written in the Constitution of Illinois, from which ours was borrowed, as to permit a board of freeholders, as well as a jury, to ascertain the compensation to be paid for the condemnation of property; and thereby to have intended to create the special privilege herein referred to in Missouri, when no such special privilege can be found in the Constitution or laws either of Illinois, from which these provisions of the Constitution were borrowed, or in any other state in the Union.

One of two things is absolutely true—either the framers of the Constitution of this State knowingly and purposely created that special privilege in favor of corporations, or else the construction heretofore placed by this court on section 4 of article 12 is not the correct construction nor the meaning of that section that the framers of the Constitution intended to impart. I have no difficulty in reaching the conclusion that the latter is true, for I am unwilling to believe that the former could by any possibility of means be true.

By construing section 4 of article 12 to apply only in cases where the object of the proceeding was to take away all property and franchises of the incorporated company, in which case a trial by jury is guaranteed, and that in all other cases where simply some piece of property belonging to an incorporated company is to be condemned the compensation may be ascertained by either a jury or a board of freeholders as the law directs, pursuant to section 21 of article 2, no such incongruity as that herein pointed out will exist and no such special privilege will be conferred. That this construction is possible is beyond debate or cavil, and that a construction which does not produce such a result is

the construction which ought to be adopted is equally beyond question.

Under the construction heretofore placed by this court on section 4 of article 12, if two tracts of land adjoining each other are to be taken for a public purpose, and one of those tracts is owned by an incorporated company, and the other is owned by a private citizen, and both are used for identically the same purposes, for instance, both are used for ordinary business purposes, the unjust spectacle is presented by the laws of this State, as heretofore interpreted, of guaranteeing to the mere business corporation a trial by jury when its property is to be taken and of denying the right of trial by jury to the individual, and permitting the property of the individual to be taken and the compensation to be assessed by a board of freeholders. The human mind is incapable of conjecturing any reason that could have actuated the framers of the Constitution in providing for such inequality before the law. In my judgment they did not do so and never intended to be so understood.

I fully understand and appreciate the importance of the principle underlying the doctrine of *stare decisis*, but there is another principle of law which is of infinitely more importance than the doctrine of *stare decisis,* which is the doctrine that all men are equal before the law, and that it is contrary to the spirit and genius of our institutions that special privileges shall be conferred upon any class of the community. In the eye of the law an incorporated company stands upon no better footing than an American citizen. To create a special privilege in its favor is, in my judgment, as violative of our principles and theory of government, as to say that all men with certain colored hair or certain colored eyes or of certain stature should be entitled, when their property shall be taken, to the benefit of trial by jury, but that all other persons in the community who do not

answer to that description might have their property taken either by the verdict of a jury or a board of freeholders as the law might direct. Unless the construction I place upon these provisions of the Constitution is the correct interpretation of the meaning of the lawmakers, it behooves the people of the State by a constitutional convention or by amendment to the Constitution to change the phraseology of section 4 of article 12 so as to prevent the possibility by construction of the creation of such a condition and of such special privileges as are hereinbefore pointed out. Where a law or provision of a Constitution is susceptible of two constructions, one of which harmonizes with the spirit and purposes and genius of the whole body of the law and the policy of the government, and the other creates special privileges or a favored class, the former construction should always be adopted. Such is the case here. No reason has been given or attempted to be given for the construction heretofore placed upon section 4 of article 12, and none can be given. It has only been said, "*Ita scripta lex.*" I think the law has not been so written, but that it has simply been misconstrued.

For the foregoing reasons I am compelled to dissent from the conclusions announced in the first paragraph of the majority opinion in this case.