In re Condemning Private Property for Public Use for Sewer and Water Rights in Kansas City, Missouri and Providing for Payment of Just Compensation Therefor, Under Ordinance No. 35677, Passed August 9, 1968.

KANSAS CITY, Condemnor-Respondent,

v.

Claude G. WEBB and Coga Webb, et al., Condemnees-Appellants.

Nos. 55230, 55432.

Supreme Court of Missouri,
En Banc.

March 13, 1972.
Certiorari Denied Oct. 10, 1972.
See 93 S.Ct. 62.

Aaron A. Wilson, City Counselor, Ned B. Bahr, Assoc. City Counselor, Kansas City, for respondent Kansas City, a Missouri Municipality, Condemnor herein.

William K. Poindexter, Kansas City, Phillip L. Baker, Jack C. Terry, Independence, for appellants.

HOUSER, Commissioner.

This is a condemnation proceeding commenced by the City of Kansas City, a constitutional charter city, by the filing in the office of the Circuit Clerk of Jackson County of its Ordinance No. 35677 condemning private property for public use for permanent sewer and water rights of way and temporary construction easements in connection with Pollution Control Project White Oak Pump Station and Force Main; providing for payment of compensation under Article VI of the Charter of Kansas City and for institution and prosecution of the proceedings under said Article VI, or under RSMo 1959, Chapter 523, as amended, as supplemented by Supreme Court Rule 86, "or by any other method authorized by law for the determination of the payment of just compensation"; authorizing the city counselor to select the procedural method for such acquisition; providing that the landowners were to be conclusively bound by his selection; for payment of compensation from city funds, and that the improvements were to be available to serve the landowners within the limits of the watershed and giving them the right to make sewer connections therewith, the council determining that said lands were specially benefited by availability of the permanent sewer easements. Notice was published. Landowner Bertha Bell filed a petition alleging that she was entitled under the law of the land to a trial of her claims for compensation by a common law jury of twelve men, and demanded same. The circuit judge overruled her petition, whereupon Bertha Bell and landowners Webb and Brightwell filed answers denying that the proposed use is a public use; alleging that it is a private use of benefit to private land developers; that the city charter provisions for condemnation deny them equal protection of the laws as provided for in the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the state constitution, by authorizing compensation to be ascertained and assessed by a jury of six freeholders of the city at the election of the city while at the same time providing in Section 147 of the charter that if any incorporated companies subject to the same condemnation proceedings be entitled under the law of the land to trial of its claims for compensation by a common law jury of twelve persons it may demand and have such a trial; that no such protection is afforded individual condemnees. Landowners further alleged that the condemnation violates their constitutional rights under the Fifth and Seventh Amendments, and deprives them of property without due process of law under the Fourteenth Amendment. They sought dismissal of the action, praying in the alternative for damages for $9,934.08 (Bell); and $9,426.25 (Webb and Brightwell).

The circuit judge selected six resident freeholders of the city who were sworn in and empaneled as a jury. The freeholders' jury rendered a verdict ascertaining that the Webbs and Brightwells had sustained no actual damages and awarding $200 for damages done to the Bell property over and above any special benefits accruing. The court accepted the verdict, allowed each of the six jurors a fee of $450 (three days each at $150 per day), a total of $2,700, and discharged the jury. The Webbs and Brightwells and Bertha Bell filed timely motions for new trial. The court, sitting without a jury, heard extensive oral evidence and considered 70 exhibits introduced on the issue of public or private use. The

court made findings of fact and conclusions of law, overruled landowners' motions for new trial, found the taking was for a public and not a private use, upheld and sustained the constitutionality of the ordinance and procedure, confirmed the verdict of the jury, and ordered title in the easements vested in the city. Landowners appealed.

Landowners specifically and timely raised the constitutional question at the inception of these proceedings, preserved the same in the trial court, and have kept it alive on this appeal, whether in denying their demand for trial before a common law jury of twelve persons (a right afforded corporate condemnees in like circumstances) landowners were denied their right to equal protection of the laws under Amendment XIV to the Constitution of the United States and the equal rights and opportunity accorded them under § 2 of Article I of the Constitution of Missouri, 1945.

The following constitutional, statutory and charter provisions are pertinent:

"No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Amendment XIV, Constitution of the United States.

" * * * [A]ll persons are created equal and are entitled to equal rights and opportunity under the law; * * *." Article I, Section 2, Constitution of Missouri, 1945.

" * * * [P]rivate property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be provided by law; * * *." Article I, Section 26, Constitution of Missouri, 1945.

"The exercise of the power and right of eminent domain shall never be construed or abridged to prevent the taking by law of the property and franchises of corporations and subjecting them to public use. The right of trial by jury shall be held inviolate in all trials of claims for compensation, when the rights of any corporation are affected by any exercise of said power of eminent domain." Article XI, Section 4, Constitution of Missouri, 1945.

"Any plaintiff or defendant, individual or corporate, shall have the right of trial by jury of twelve persons, if either party file exceptions to the award of commissioners in any condemnation case." § 523.060, RSMo 1959 (Laws Mo.1945, p. 1072).

"Whenever the charter of any constitutional charter city makes provision for the condemnation of property for public purposes and assessment of benefits therefor, such city may elect to proceed with such condemnation or assessment, or both, in the manner provided in sections 88.010 to 88.070 or to proceed in the manner provided in its charter." § 88.073(2), RSMo 1959 (§ 7240 RS 1939, as amended in 1949 by H.B. 2036, effective April 14, 1950).

" * * * Subject only to the necessary extent of the limitations imposed by the constitutions and laws of the United States and the State of Missouri, it [Kansas City] shall have power: * * * (9) To exercise the right of eminent domain and to condemn property, real or personal, or any right, interest, easement, restriction or use therein, within or without the city or state for any public or municipal use or purpose." Kansas City Charter, Article I, § 1.

"The city may exercise the power of eminent domain and the power of determining the damage caused to property by any public work or improvement or use, or restriction of use, and the power of making and levying special assessments, in the manner prescribed in this charter, or in any other lawful manner. And whenever any property, land, easement, right-of-way, use or right of any character is taken or damaged by the city for public use, just compensation shall be paid to the owner or owners thereof. Such compensation shall be ascertained and assessed by a jury of six (6) freeholders of the city, in the manner provided in this charter, or as other-

wise provided by law. * * *" Kansas City Charter, Article VI, § 128.

"Upon the day fixed by the order and notice for the empaneling of a jury, or upon any day thereafter to which the proceedings in said cause have been continued or adjourned, the court shall empanel a jury of six (6) disinterested freeholders of the city, who shall receive the same compensation as other jurors in such court. * * *" Kansas City Charter, Article VI, § 142.

"At the hearing of said cause the parties interested may submit evidence to said jury of freeholders [provided for in section 142] touching the matters under consideration. Such jury may examine personally each piece of property described on the map or plat filed in said cause as aforesaid, and all property claimed to be damaged, and the property, if any, to be assessed with benefits; and the city engineer, the director of public works, or the superintendent of parks, or any assistant of any of them, may accompany such jury for the purpose of pointing out the property aforesaid." Kansas City Charter, Article VI, § 144.

"If any incorporated company which may be interested in the whole or in any part of the land to be taken or damaged by the said proceedings, be entitled, under the law of the land, to trial of its claims for compensation therefor by a common law jury of twelve (12) men, it may at any time prior to the day fixed as herein provided for empaneling a jury, file in the office of the clerk of said court, a petition in which it shall state the description of the property owned or claimed by it so to be taken or damaged and the amount and nature of its claim therefor, and may further state that it demands a trial before a common law jury of twelve (12) men of its claim for compensation therefor. If any such incorporated company shall not so file such petition before such date, it shall be deemed and taken to have waived its right of trial by a jury as aforesaid of such issue. If any such incorporated company shall file such petition as aforesaid, then the court

thereupon shall cause such jury to be empaneled for the trial of such claim; and the issues to be tried by such jury shall be the actual value of the land of such claimant taken, if any, and the amount of damage to the land of such claimant not taken, by the public use thereof, and by the use of the land taken for the purposes for which it is taken, including all that the city may, from time to time, do or cause to be done with or upon the private property so taken or damaged. If two or more such incorporated companies interested in the land to be taken or damaged as aforesaid be entitled to trial by a common law jury as aforesaid, and shall make demand therefor as aforesaid, the court may, in its discretion, as may appear expedient, order that all such claims shall be tried at the same time before one jury, and further proceedings in the original cause shall be continued from time to time by the court until such issue or issues as to such incorporated companies shall have been determined by the verdict of such jury.

"Any party to such issue which may feel aggrieved by the verdict of said jury may, within four (4) days after the rendition of the same, file its motion for a new trial and in arrest of judgment, and said motion or motions shall be heard without delay, and after hearing the same, the court may overrule the same, or may order a new trial of such issue or issues on good cause shown; but no appeal from the judgment of the court overruling such motion shall be had therein until the final judgment of confirmation of the entire proceedings by the said court as hereinafter provided." Kansas City Charter, Article VI, § 147. (The city concedes that under § 147 a corporation has a right to elect to have its damages assessed by a common law jury. See City of St. Louis v. Roe, 184 Mo. 324, 83 S.W. 435.)

The Kansas City Charter further provides that the jury of freeholders shall ascertain the just compensation to be paid, and in case a claim for compensation shall have been tried, determined and ascertained by a common law jury as therein provided,

the jury of freeholders in said proceeding shall accept and adopt the valuation or assessment of damages by the common law jury, and incorporate the same as a part of the verdict rendered by the jury of freeholders. Kansas City Charter, Article VI, § 149.

The circuit court has the power on its own motion or on the motion of any party filed within four days after the rendition of the verdict of the jury of freeholders to set aside the verdict and appoint a new jury of freeholders to try the cause de novo and render a new verdict, but the verdict of any common law jury theretofore rendered in said proceeding fixing the compensation to be paid to any incorporated company shall be accepted and adopted by such new jury as a part of its finding and verdict. Kansas City Charter, Article VI, § 155.

Strange as it may seem, although the right of condemnees under special charter city condemnations to trial by a common law jury has been before this Court on many occasions, up to this time the equal protection of the laws question has either not been raised in the trial court and preserved for appellate review, or consideration of the point has not been given because the request for a common law jury was not timely made and therefore the question was held waived, or the case was decided on the basis of statutory construction. In City of Kansas City v. Vineyard, 128 Mo. 75, 30 S.W. 326, and In re Independence Avenue Boulevard (Kansas City v. Smart), 128 Mo. 272, 30 S.W. 773, requests by individual condemnees for trial by a common law jury of twelve based upon the comparable constitutional provision carried forward into the present state constitution as Article XI, Section 4, were denied and that action was upheld by this Court. The question of equal protection of the laws was not raised or discussed in those cases. The rule that a common law jury

was not necessary in eminent domain proceedings in special charter cities was reannounced in several cases,[1] but in none of these was the question of equal protection of the laws raised or decided.

In 1906 Justice William C. Marshall, in a dissenting opinion filed in Southern Missouri & A. Ry. Co. v. Woodard, 193 Mo. 656, 92 S.W. 470, 471–475, stated his unwillingness "to believe that the Constitution of this state intended that where the property of an incorporated company is to be taken by condemnation, a right of trial by jury is guaranteed to the corporation, and that the land of an individual, to be taken in the same proceeding, can be taken without the citizen being entitled to a trial by a jury." He considered that such a construction created a special class with special privileges, thereby discriminating in favor of corporations and against individuals. He said, "Under the construction heretofore placed by this court on section 4 of article 12, if two tracts of land adjoining each other are to be taken for a public purpose, and one of those tracts is owned by an incorporated company, and the other is owned by a private citizen, and both are used for identically the same purposes, for instance, both are used for ordinary business purposes, the unjust spectacle is presented by the laws of this state, as heretofore interpreted, of guarantying to the mere business corporation a trial by jury when its property is to be taken and of denying the right of trial by jury to the individual and permitting the property of the individual to be taken and the compensation to be assessed by a board of freeholders. The human mind is incapable of conjecturing any reason that could have actuated the framers of the Constitution in providing for such inequality before the law. * * * [A]ll men are equal before the law, and * * * it is contrary to the spirit and genius of our institutions that special privileges shall be conferred upon

1. City of Kansas City v. Marsh Oil Co., 140 Mo. 458, 41 S.W. 943; City of St. Louis v. Smith, 325 Mo. 471, 30 S.W.2d 729; City of St. Louis v. Schopp, 325 Mo. 480, 30 S.W.2d 733.

any class of the community. In the eye of the law an incorporated company stands upon no better footing than an American citizen. To create a special privilege in its favor is, in my judgment, as violative of our principles and theory of government as to say that all men with certain colored hair, or certain colored eyes, or of certain stature should be entitled, when their property shall be taken, to the benefit of trial by jury; but that all other persons in the community, who do not answer to that description might have their property taken either by the verdict of a jury or a board of freeholders as the law might direct."

In 1945, apparently in an attempt to equalize the situation, the General Assembly passed Laws 1945, p. 1072 (now § 523.060) providing that any plaintiff or defendant, individual or corporate, should have the right to trial by a jury of twelve persons upon filing exceptions to the award of commissioners in any condemnation case. This was followed, as above indicated, by the amendment of § 7240, RS 1939, Laws 1949, H.B. 2036 (now § 88.073 [2]).

Shortly thereafter individual condemnees, claiming the right to the assessment of damages by a common law jury, brought the question to this Court in In re East Park Dist. of Kansas City (Kansas City v. Dougherty), 361 Mo. 829, 237 S.W.2d 118. The Court considered the issue in the light of Laws of 1945, p. 1072, and newly enacted H.B. 2036 (1949), handing down two opinions, both of which upheld the denial of the right to trial of condemnees' exceptions before a common law jury, without the parties having raised the constitutional questions now before the Court.

In State ex rel. Dennis v. Williams, 362 Mo. 176, 240 S.W.2d 703 (1951), in St. Louis, a charter city, damages for a change of grade of several individuals were awarded under the charter provision for ascertaining damages by a condemnation commission of three persons. A circuit judge was about to try relator's exceptions without a jury of twelve, which relator had demanded. The landowner brought prohibition in this Court, on the basis of §

523.060, the provisions in Chapter 88 for assessment of damages by a jury, and the equal protection of the laws provision of Amendment XIV. One of relator's contentions was that "Statutes and charter provisions denying jury trial to individuals and granting same to corporations constitutes violation of equal protection of law under XIV Amendment, U. S. Constitution"; that to discriminate between corporations and natural persons violates this provision; that there are no real differences in the character and situation of the two classes of persons; that any arbitrary or unreasonable discrimination between the two classes with regard to matters of procedure constitutes a denial of equal protection of the laws. This Court, sitting en banc, reviewed the two opinions filed in In re East Park Dist. of Kansas City, supra, and on the basis of statutory construction decided that constitutional charter cities have the right, if they so elect, to condemn property for public use and to assess benefits and damages in the manner provided by its charter and that individuals do not have the right to a trial before a common law jury in a condemnation suit brought by a charter city in the manner provided by its charter. Special Judge Cave wrote the opinion denying prohibition, analyzing the opinions of Ellison and Dalton, JJ., in the East Park District case, supra, decided the year before, concluding that both opinions for different reasons held that § 523.060 "does not *now* give to an individual defendant the right to a trial before a common law jury in a condemnation suit brought by a charter city *in the manner provided by its charter*," and that both opinions agreed that before the passage of § 523.060 the courts had uniformly held that a common law jury to try exceptions was not available to individual defendants where special charter cities proceeded in the manner provided by charter. Judge Cave found it "unnecessary again to discuss the constitutional provisions cited and relied on by relator," referring to the citations in Judge Ellison's opinion (which do not relate to the constitutional question now before us). Although the Court had an opportunity to

pass upon the question of equal protection of the laws, it was passed over without decision.

Later, in City of St. Louis v. Gruss, Mo. Sup., 263 S.W.2d 387, the equal protection of the laws question was not raised in the trial court, only in this Court; in an opinion by Dalton, J., it was ruled that the question was not before this Court and therefore the Court did not pass upon it. The opinion, however, hinted that the Court would seriously consider the contention if properly raised, in this language, p. 391: "* * * [We] do not find that this court has held that a corporation is entitled to certain rights and the benefits of certain modes of procedure and that an individual similarly situated is not entitled to them," citing Backus v. Fort Street Union Depot Co., 169 U.S. 557, 18 S.Ct. 445, 42 L.Ed. 853, and McClung v. Pulitzer Pub. Co., 279 Mo. 370, 214 S.W. 193.

The question now having been specifically raised and properly preserved for appellate review, we will consider it.

" 'Equal protection of the law means equal security or burden under the laws to every one similarly situated; and that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or classes of persons in the same place and under like circumstances. It is secured where a law operates on all alike, and does not subject the individual to an arbitrary exercise of the powers of government. This provision therefore prohibits discriminating and partial legislation, favoring particular persons or against particular persons of the same class. It guarantees equality, but not identity, of privileges and rights.' " Ex Parte Wilson, 330 Mo. 230, 48 S.W.2d 919, 921.

Equal protection of the laws "* * * means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances." Missouri v. Lewis,

101 U.S. 22, 31, 25 L.Ed. 989. (A corporation is a "person" within the meaning of the Fourteenth Amendment. Pacific Movement of Eastern World v. Wright, Mo. App., 117 S.W.2d 647).

The Fourteenth Amendment intended "* * * that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to * * * acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, * * *." Barbier v. Connolly, 113 U.S. 27, 31, 5 S.Ct. 357, 359, 28 L.Ed. 923.

"An act of the legislature which in terms gave to one individual certain rights, and denied to another similarly situated the same rights, might be challenged on the ground of unjust discrimination and a denial of the equal protection of the laws." Backus v. Fort Street Union Depot Co., 169 U.S. 557, 571, 18 S.Ct. 445, 451, 42 L.Ed. 853.

"* * * [T]he equal protection of the laws is a pledge of the protection of equal laws." Yick Wo v. Hopkins, 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220.

"* * * [T]he guaranty was intended to secure equality of protection not only for all but against all similarly situated. Indeed, protection is not protection unless it does so." Truax v. Corrigan, 257 U.S. 312, 333, 42 S.Ct. 124, 130, 66 L.Ed. 254.

"And the concept of equal protection has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged." Reynolds v. Sims, 377 U.S. 533, 565, 84 S.Ct. 1362, 1383, 12 L.Ed.2d 506.

The people of Kansas City in the enjoyment of their right of home rule may adopt in their charter, which is the organic law for the government of the municipality, whatever provisions for the exercise by the city of the right of eminent domain they see

fit, free from control of the General Assembly, and their charter provisions have the same force and effect as an act of the General Assembly, as long as they are consistent with the constitution and laws of the state (and the Constitution of the United States), and the courts when called upon must enforce these special charter provisions and can declare them invalid only if they violate constitutional limitations or prohibitions, or the general laws of the state. Kansas City v. Ashley, Mo.Sup., 406 S.W.2d 584; City of Kansas City v. Marsh Oil Co., 140 Mo. 458, 41 S.W. 943, 946, 947. On the freedom of Kansas City to legislate on matters of local concern, limited only by the constitutions and general laws, see City of Kansas City v. Brouse, Mo.Sup. en banc, 468 S.W.2d 15 (decided June 14, 1971); State ex rel. Voss v. Davis, Mo. Sup., 418 S.W.2d 163; Grant v. Kansas City, Mo.Sup. en banc, 431 S.W.2d 89, 92. "* * * [I]t is settled law that when special charter provisions relating to procedure in condemnation cases are not inimical to the general scope of the policy of our Constitution and laws, then such special provisions govern as against the provisions of general law; * * *." Brunn v. Kansas City, 216 Mo. 108, 115 S.W. 446, 449.

■ The provisions of the Kansas City Charter clearly classify property affected by the exercise of the power of eminent domain according to the type of owner, individual or corporate, giving to corporate owners the right to have their damages ascertained by a common law jury of twelve persons or a freeholders' jury of six at the election of the corporation but limiting individual owners similarly situated to submission of their claims for damages to a jury of six freeholders. Classification of the subjects of legislation is not prohibited by the equal protection of the laws clauses of the United States and State constitutions "if all within the same class are included and treated alike," Brawner v. Brawner, Mo.Sup. en banc, 327 S.W.2d 808, 815[15]; Hammett v. Kansas City, 351 Mo. 192, 173 S.W.2d 70, 72[1], and cases cited; "if all

persons in the same class are treated with equality," King v. Swenson, Mo.Sup. en banc, 423 S.W.2d 699, 705[9]. The general purpose of these constitutional provisions is to prevent invidious discrimination. King v. Swenson, supra. Discrimination is arbitrary and unconstitutional if the classification rests upon a ground wholly irrelevant to the achievement of the state's objective, Gem Stores, Inc. v. O'Brien, Mo.Sup. en banc, 374 S.W.2d 109, 117; or which is not based upon differences reasonably related to the purposes of the legislation. Petitt v. Field, Mo.Sup., 341 S.W.2d 106, 109. The selection must be not merely possibly, but must be clearly and actually, arbitrary and unreasonable. Ballentine v. Nester, 350 Mo. 58, 164 S.W.2d 378. The question is whether the principle of classification adopted rests upon some real difference, bearing a reasonable and just relation to the act with respect to which the classification is proposed. State ex inf. McKittrick ex rel. Ham v. Kirby, 349 Mo. 988, 163 S.W.2d 990.

■ For many purposes corporations and individuals may be separately classified and subjected to different rights and burdens, 16 Am.Jur.2d Constitutional Law, § 520, and in the field of eminent domain different rights may be granted to different classes of corporations and against different classes of property, and different methods of procedure may be prescribed for different classes of cases, where the classification is not arbitrary, unjust or unreasonable, 16A C.J.S. Constitutional Law § 509, but a classification which arbitrarily and unreasonably favors a corporation as against an individual, or vice versa, without any rational and material basis for the preference, is invalid both under the Fourteenth Amendment and Article I § 2 of the State Constitution.

Discrimination between condemnors and condemnees or between different condemnees, without any reasonable basis, has been frequently condemned as a violation of equal protection of the laws. Thus, a city charter allowing the city but not allow-

ing landowners a right of appeal from the report of the commissioners appointed to appraise the condemned land was held a denial of equal protection in In re City of Rochester, 184 App.Div. 369, 171 N.Y.S. 12, aff. 224 N.Y. 659, 121 N.E. 859.

Laws differentiating between the rate of interest payable in state condemnation proceedings (6%) and the rate payable in municipal condemnation proceedings (4%), on delayed payments of just compensation, represent an arbitrary, unreasonable and improper classification of owners of property and a denial of equal protection, in view of the constitutional provision guaranteeing the same measure of just compensation to all owners of property. In re Manhattan Civic Centre Area, 57 Misc.2d 156, 291 N.Y.S.2d 656. And see City of Atlanta v. Sims, 210 Ga. 605, 82 S.E.2d 130; City of Atlanta v. Wilson, 209 Ga. 527, 74 S.E.2d 455.

In McClung v. Pulitzer Pub. Co., 279 Mo. 370, 214 S.W. 193, a statute providing that libel suits against corporations could be brought in the county where the plaintiff resides but that individual libelers could be sued only in the county where found was held to deny corporations the equal protection of the laws. The basis of the decision is that disadvantages were placed upon corporations charged with libel, without any reasonable basis; that there is no distinction or difference in fact between corporate libelers and individual libelers.

In Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483, a state statute regulating the business of ginning cotton for the general public for profit, which permitted an individual to engage in the business only upon his first making a satisfactory showing of public necessity for a license, but which allowed certain corporations to engage in the same business in the same locality without making such a showing, was held discriminatory against individuals in violation of the equal protection clause. Such a classification was deemed essentially arbitrary, being based upon no real or substantial differences rea-

sonably related to the subject dealt with by the legislation.

Again, in State v. Nashville, C. & St. L. Ry. Co., 124 Tenn. 1, 135 S.W. 773, a state statute forbidding any corporation from discharging any employee for voting or not voting at any election or for voting for or against any candidate or measure was held invalid under the equal protection clause. It was held discriminatory without natural or reasonable basis, and "vicious class legislation," because it did not apply to employers who were individuals, and its application was made to depend solely upon whether the employer was a natural or artificial person.

Tested by these rules and authorities the denial to these individual condemnees of their request for a trial of the issue of damages before a common law jury of twelve denied them the equal protection of the laws and equal rights and opportunity under the law in violation of the constitutional provisions invoked. Granting to a corporate owner of land the right to elect between a trial by a common law jury or a freeholders' jury but denying the same right to an individual landowner similarly situated clearly discriminates between the two types of owners without any rational basis for differentiation. It creates an artificial classification bearing no reasonable, just or proper relation to the object of the legislation, which is to arrive at just compensation for private property taken or damaged for public use. It creates an inequality as between persons within the same class (landowners subject to the exercise of the power of eminent domain by the city). It constitutes arbitrary selection and is unreasonable because there is no real or substantial difference between corporations and individuals when it comes to compensation of the owner of land for the taking or damaging of land.

■ To clarify the extent and the limits of the present holding: We are ruling that Article XI § 4 of the Constitution of Missouri, 1945, vouchsafing to corporations the right of trial by jury in all trials of claims

for compensation when the rights of any corporation are affected by any exercise of the power of eminent domain, and Article VI of the Charter of Kansas City, must be read in conjunction with and in the light of the equal protection of the laws clause of Amendment XIV and the equal rights and opportunities clause of Article I § 2 of the State Constitution; that these constitutional provisions supplement said Article XI § 4 and Article VI and effectively equalize and coordinate the rights of individuals, placing individual rights in parity with corporate rights in this respect, and that the action of the circuit court in denying appellants' demand for a trial by a common law jury of twelve persons denied them equal protection of the laws and equal rights and opportunity under these constitutional provisions. We are not, however, declaring unconstitutional Article VI § 128 or any other provision of the Charter of Kansas City. We are not passing on the question whether the freeholder jury procedure constitutes due process of law. Our decision will not prevent the city authorities from continuing to use the freeholder jury procedure in eminent domain cases, except where a condemnee files a timely petition demanding a trial of his claim for compensation before a common law jury in the manner and under the conditions prescribed in Article VI, § 147 of the Charter, in which event the demand must be respected. Except for appellants, our ruling is prospective only and shall apply to timely requests for trial by a common law jury made after the date of the publication of this opinion in the advance sheets of the Southwestern Reporter.

█ Landowners' second point is that the use condemned is a private, not a public, use. The purpose for which the city condemned easements through landowners' private property was to accommodate sewer and water lines to conduct sewage waste originating in the so-called White Oak Creek watershed of Kansas City and Raytown (an area of some 14.6 square miles) to sewage treatment and disposal facilities implementing the inter-municipal agreement between Kansas City and Raytown. One purpose was to eliminate certain private sewage lagoons which had been built by real estate developers in the late 50's and early 60's to provide sewage treatment facilities for sewage from lots being sold by various land developers in a portion of the watershed, which had been operated and maintained first by the developers prior to annexation of the area, then by a private nonprofit corporation, and later by the city under an agreement with the corporation. The largest of three privately built lagoons was deeded to the city prior to the institution of the condemnation proceedings, and thereafter the users of the lagoons were charged by the city for sewer service. The facilities in question are not restricted to private use but are open for use by all affected members of the public in the entire watershed area. On the extensive evidence introduced, both oral and documentary, we sustain the trial court's finding that the use condemned is for public purposes.

Orders of November 3, 1969 and January 26, 1970, and judgment and decree of November 18, 1969 reversed and set aside. Cause remanded with directions to proceed to the trial of the claims of these appellants for compensation before a common law jury of twelve persons or before a newly empaneled freeholders' jury, at their election.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the Court en Banc.

Reversed and remanded with directions.

FINCH, C. J., DONNELLY, SEILER, HOLMAN, BARDGETT and HENLEY, JJ., and WEIER, Special Judge, concur.

MORGAN, J., not sitting.